UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

Rand Corporation,

        Plaintiff,

v.                                              Civil Action No. _____

Yer Song Moua; Manisy Moua; and
John Doe and Mary Rowe,

        Defendants.
_____

**COMPLAINT**
_____

Plaintiff, for its claim for relief, states and alleges as follows:

1.     Plaintiff Rand Corporation ("**Rand**") is a Minnesota corporation.

2.     Defendants Yer Song Moua and Manisy Moua ("**Mouas**") are husband and wife and currently reside at 2438 Arlington Avenue East, Maplewood, MN 55119, which property is legally described as follows:

> Lot 7, Block 1, Oak Ridge Estates 3rd Addition, according to the recorded plat thereof, Ramsey County, Minnesota,

("**Property**").

3.     The Mouas and their Property were in foreclosure prior to their efforts to refinance through Rand, with a sheriff's sale that occurred on December 2, 2004, and subject to a six month redemption period expiring on June 2, 2005.

4.     Defendants, John Doe and Mary Rowe, whose true and correct names are unknown to Rand, may have or claim some interest in the Property, which interests, if any, are junior to the interest of Rand.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 2201.

**6.** Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other reasons, all parties reside in this District and this action concerns real estate located in this District.

## FACTUAL ALLEGATIONS

7. On or about January 5, 2005, the Mouas applied for a mortgage loan with Rand to refinance their existing mortgage and redeem from their sheriff's foreclosure sale.

8. On or about April 22, 2005, the Mouas closed on the refinancing through Rand, and executed and delivered a Promissory Note to Rand in the original principal amount of $245,000.00 ("**Note**"). An accurate copy of the Note is attached as Exhibit 1.

9. The stated interest rate in the Note was **13.99%** for the first twelve (12) payments beginning June 1, 2005, and stepped up to **14.99%** for the remaining 49 payments due before the July 1, 2010 maturity date of the Note.

10. To secure repayment of the indebtedness evidenced by the Note, the Mouas simultaneously executed and delivered a Mortgage, dated April 22, 2005, and filed with the Ramsey County Recorder's Office on April 28, 2005, as Document Number 3851666, covering the Property ("**Mortgage**").

11. On or about January 5, 2005,[1] and again on the date of closing, April 22, 2005, Rand provided the Mouas with all required disclosures, and amended disclosures, pursuant to the Federal lending statutes, the Truth in Lending Act ("**TILA**") and Home Ownership and Equity Protection Act ("**HOEPA**"). Accurate copies of some of the relevant notices and disclosures for both dates are cumulatively attached as Exhibit 2.

12. Based upon the Mouas' decision to modify the terms of the loan and borrow an additional $46,200.00 from Rand, they were to receive amended disclosures under TILA and HOEPA.

13. Multiple attempts were made in April of 2005 to close the transaction, due to failures by the Ramsey County Sheriff to timely provide redemption payoffs in advance of closing. Accurate copies of facsimile communications with the Ramsey County Sheriff are attached as Exhibit 3.

14. Due to the pending redemption period set to expire in 41 days, the need to redo all loan documents, update all payoffs with other creditors, and the risk of losing loan approval if the closing were rescheduled past April 22, 2005, the Mouas made the decision on or about April 21, 2005 to proceed with the closing the next day.

15. Since TILA and HOEPA required Rand to give amended disclosures three days before closing on April 22, 2005, the Mouas chose to waive their three-day waiting period based upon a bona fide personal financial emergency.

---

[1] The Mouas originally requested a loan amount of $198,800.00 in January of 2005, at which time they were given proper notices and disclosures under TILA and HOEPA. After they completed a sale of a separate commercial building on March 30, 2005, the Mouas requested an increase in loan amount from Rand to $245,000.00. Thus, Rand was required to give the Mouas additional notices and disclosures under TILA and HOEPA.

16. On the day of closing, the Mouas handwrote their waiver of their three-day waiting period, received their amended disclosures at closing on April 22, 2005, and acknowledged in their handwritten waiver letter that they still had their three-day right of rescission period after closing:

> We are Further aware That we have a 3 day recession after signing the Closing Docs to review all The Final Documents. We Feel That this will allow us Time to address any Concerns or questions.

An accurate copy of the Mouas' handwritten waiver letter is attached as Exhibit 4.

17. As a matter of law, even if a Court were to determine that a bona fide emergency did not exist, an invalid waiver of the three-day waiting period by itself does not implicate rescission rights under any provision of TILA or HOEPA.

18. The Mouas were given properly completed notices of their rescission rights at closing. Attached as Exhibits 5 & 6 are two accurate copies of the "Notice of Right to Cancel" that were signed by the Mouas on the date of closing, April 22, 2005.

19. The Notice of Right to Cancel accurately stated that the Mouas were entitled to cancel the transaction by MIDNIGHT of APRIL 26, 2005.

20. The Mouas allowed their three-day rescission rights to expire, and did not cancel the transaction with Rand on or before April 26, 2005.

21. The one-year statute of limitation for any damage claim for an alleged invalid waiver of the three-day waiting period expired on April 22, 20<u>06</u>. The Mouas failed to timely commence any damage claim against Rand, which action would now be time-barred as a matter of law.

22. Instead of commencing an action for damages on or before April 22, 20<u>06</u>, the Mouas with the assistance of legal counsel, attempted to "cancel and rescind" their mortgage with Rand on or about April 11, 20<u>06</u>. An accurate copy of their attempt to rescind on April 11, 2006 is attached as Exhibit 7.

23. The Mouas' attempt to rescind almost one year after the closing was ineffective and of no force or effect.

## APR OVERSTATEMENT DOES NOT IMPLICATE RESCISSION

24. The Mouas' TILA and HOEPA notices and disclosure they received from Rand were accurate in all respects, except for a net **overstatement** of the interest rate.

25. The Note rate of 13.99% for the first 12 payments was inaccurately disclosed at 13.90% (**understated**), which discrepancy of .09% is less than the statutory tolerance for disclosure errors of 1/8 of one percent (.125%). 15 U.S.C. §1606(c); 12 C.F.R. §226.22(a)(2). The Note rate of 14.99% for the next 49 payments was inaccurately **overstated** by about 9/10 of one percent (.91%).

26. Overall, the net effect of the overstatement/understatement was an APR that was **overstated** by about **.65%. Simply put, the mortgage loan was actually cheaper for the Mouas than disclosed in the TILA/HOEPA notices, which was to their benefit and did not prejudice them in anyway.**

27. **As a matter of law, since the Mouas were willing to pay a slightly higher rate than the true Note rate, the Mouas cannot show detrimental reliance on the disclosure overstatement.**

5

28. Under TILA and Regulation Z, an overstatement does not *in itself* constitute a violation of the Act, without more, so as to create any rescission rights for the Mouas:

> The disclosure of an amount or percentage which is greater than the amount or percentage require to be disclosed under this title does not in itself constitute a violation of this title.

15 U.S.C. §1602(z)(underline added). Congress was more concerned about **understatements** in the actual APR, leading courts and commentators to find that overstatements absolve a creditor from liability or violation of TILA. *Ramsey v. Vista Mortgage Corp*, 176 B.R. 183, 188-189 (9th Cir. BAP 1994)(holding that a borrower is only entitled to the 3-year rescission period if the borrower can demonstrate detrimental reliance on the overstatement, which Ramsey could not do as a matter of law).

## DEFAULTS, RESCISSION & FORECLOSURE

29. The Mouas received the full benefit from disbursement of the entire principal amount of $245,000.00. Of that amount, $221,964.00 was paid to the Ramsey County Sheriff to redeem the Property from a foreclosure sale that occurred on December 2, 2005. $47,411.13 was paid to MGIC Credit Assurance Corporation. $24,164.19 was paid for settlement charges. Because the amount secured under the Mortgage was not adequate to satisfy all of the Mouas obligations, the Mouas paid $48,539.32 at closing, which they had obtained by selling a commercial building they owned in St. Paul, Minnesota. An accurate copy of the HUD-1 Settlement Statement is attached as Exhibit 8.

30. Despite the above-described benefits received by the Mouas, they defaulted under the terms of the Note and Mortgage for failure to make timely monthly payments for December 1, 2005, and all subsequent payments.

31. Rand commenced a foreclosure by advertisement under Minnesota statutes, and executed a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage on March 1, 2006. An accurate copy of the Power of Attorney is attached as Exhibit 9.

32. The Mouas were personally served with a copy of the Notice of Mortgage Foreclosure on March 15, 2006. An accurate copy of the Sheriff's Certificate of Sale and Foreclosure Record is attached as Exhibit 10.

33. Instead of curing their mortgage defaults, on or about April 11, 2006, the Mouas with the assistance of legal counsel instead chose to send a letter to Rand indicating they were canceling and rescinding the Mortgage. A copy of this letter was attached as Exhibit 7.

34. The Mouas' rescission letter did not specify a basis for exercising rescission rights beyond their three-day period that ended one year earlier.

35. On May 3, 2006, Eric Cook, counsel for Rand, responded by a letter to the Mouas denying their unsupported rescission efforts because Rand's loan file contained proper documentation that the Mouas signed and received two (2) proper Notices of Right to Cancel fully and properly completed, and in full compliance with TILA. An accurate copy of this letter is attached as Exhibit 11.

36. On May 4, 2006, the Property was sold at a sheriff's sale pursuant to mortgage foreclosure proceeding by advertisement under Minnesota law. Rand was the successful bidder at the sheriff's sale with a bid amount of $269,512.07.

37. The Mouas did not redeem from the sheriff's foreclosure sale before the end of the statutory redemption period that expired on November 4, 2006, and Rand is now the fee owner of the Property.

## COUNT I – DECLARATORY JUDGMENT

38.     Rand realleges all preceding paragraphs.

39.     On or about April 11, 2006, the Mouas purportedly attempted to rescind the Mortgage and may claim that the Mortgage against the Property is void pursuant to the Federal Truth-in-Lending Act ("**TILA**"), 15 U.S.C. §§ 1635 *et seq.*, and Regulation Z, 12 C.F.R. Part 226.

40.     However, Rand gave the Mouas all required notices and disclosures under TILA and HOEPA on April 22, 2005.

41.     The TILA and HOEPA disclosures received by the Mouas on April 22, 2005 were accurate except for the net overstatement of the APR in the Disclosure Statement that did not cause any harm to the Mouas, or induce detrimental reliance from the Mouas.

42.     Thus, Rand did not violate TILA or HOEPA, or fail to make an accurate material disclosure of the APR, so as to give the Mouas a continuing right to rescind the mortgage loan past their statutory three-day rescission period.

43.     The Mouas' right to rescind expired on April 26, 2005 with no rescission right exercised by the Mouas.

44.     The Mouas' attempt to rescind their mortgage loan with Rand almost a full year after the expiration of their three-day rescission period was ineffectual as a matter of law.

45. Pursuant to 28 U.S.C. §2201 *et seq,* and Rule 57 of the Federal Rules of Civil Procedure, a dispute of a justiciable nature exists between the parties. Rand seeks a judicial determination of the parties' rights and obligations, and specifically, a determination that (1) Rand fully complied with its TILA and HOEPA notice obligations and gave the Mouas proper notice of their rescission rights on April 22, 2005, (2) the Mouas did not detrimentally rely upon the overstated APR or any other disclosure of the interest rates, (3) the Mouas failed to timely exercise any rescission rights by MIDNIGHT on April 26, 2005, (4) Rand's Mortgage and its subsequent foreclosure of the Mortgage were valid and enforceable, (5) Rand is the lawful owner of the Property due to the expiration of the statutory redemption period, and entitled to immediate possession of the Property.

## COUNT II – WAIVER/ESTOPPEL (Alternative)

46. Rand realleges all preceding paragraphs.

47. Since the time the Mouas originally obtained the mortgage loan represented by the Note and Mortgage on April 22, 2005, the Mouas have acted inconsistent with their purported rescission rights, delayed taking any acts or actions to exercise their purported rescission rights or fulfill their obligations under any purported rescission, and acted inconsistently with any continued insistence upon a rescission of the Note and Mortgage by failing to comply with their tender obligations.

48. Rand relied upon the Mouas' actions and failures to act, to its detriment, by loaning the Mouas the money and making the payments for the Mouas' sole benefit as outlined in Paragraph 29 of the Complaint.

9

49.     As a direct and proximate result of the Mouas' actions and failure to act, including failure to timely exercise rescission rights, and failure to take any steps whatsoever to fulfill their obligations under their purported rescission of the Note and Mortgage, Rand has suffered damages in an amount at least equal to the mortgage debt previously owed to Rand by the Mouas, together with additional damages, costs and disbursements, including attorneys fees that may be incurred to defend against this action.

50.     Rand is entitled to an order judicially determining and declaring that any attempted or purported rescission of the Note and Mortgage by the Mouas has been waived, and is null and void and of no further legal effect, that the foreclosure sale on May 4, 2006 is legal and final, and that because the statutory redemption period has expired, Rand is now the lawful owner of the Property and entitled to immediate possession of the Property.

## COUNT III – DECLARATORY JUDGMENT – TILA CONDITIONAL RESCISSION (ALTERNATIVE)

51.     Rand realleges all preceding paragraphs.

52.     The Mouas do not have the means to tender their obligations under the Mortgage to Rand or, at the very least, are unwilling to do so.  This is evidenced by the foreclosure sale that occurred on May 4, 2006 and the Mouas' failure to redeem during the statutory redemption period.

53.     The Mouas may seek a unilateral rescission, and seek to void the Mortgage without first showing an ability or willingness to comply with their rescission obligations under the Mortgage and TILA.

54.     This type of unilateral rescission is no rescission at all, since it leaves Rand vulnerable as an unsecured creditor of a debt that would likely be fully dischargeable in

bankruptcy. The Mouas would then become the fee owners of the Property without ever paying to purchase the Property.

55. Assuming the Mouas were entitled to a statutory rescission, which Rand denies, section 125(b) of TILA provides as follows:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. ***The procedures prescribed by this subsection shall apply except when otherwise ordered by a court***. [Emphasis added].

56. Section 226.23(d) of Regulation Z amplifies and supports Section 125(b):

> (d) Effects of rescission. (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of

11

business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) ***The procedures outlined in paragraphs (d) (2) and (3) of this section may be modified by court order***. [Emphasis added.]

"The 20-day period for the creditor's action refers to the time within which the creditor must begin the process. It does not require all necessary steps to have been completed within that time, but the creditor is responsible for seeing the process through to completion." Federal Reserve Board Official Staff Commentary to Regulation Z, 12 C.F.R. § 226, Supp. I, Comment 226.23(d)(3)-3.

57. As originally enacted and adopted, Section 125(b) and Section 226.23 did not expressly afford courts the power to modify the enumerated procedures for rescission of covered loans. Nevertheless, courts regularly exercised their equitable powers to prevent undue hardship to lenders and windfall profits to consumers. In 1980, Congress amended Section 125(b) and subsequently the Federal Reserve Board amended Section 226.23 to expressly confer this power on the courts and remove all doubts about the matter.

58. Rescission of a mortgage loan under TILA, without conditioning it on the borrower first returning that which the borrower beneficially received from the lender, can have Draconian consequences to a lender, particularly if a court does not provide the relief expressly authorized by Section 125(b) and Section 226.23(d) to modify the rescission procedures otherwise required thereby.

59. Based upon the foregoing, Rand is entitled to equitable relief in the form of <u>a mutual and conditional rescission that first requires the Mouas to comply with their tender</u>

<u>obligations, including the return of all appropriate monetary amounts owed to Rand, before Rand is required to release its Mortgage lien against the Property</u>.

### COUNT IV - UNJUST ENRICHMENT (ALTERNATIVE)

60.     Rand realleges all preceding paragraphs.

61.     The Mouas may claim they rescinded the mortgage loan represented by the Note and Mortgage, pursuant to TILA and related federal regulations. Upon information and belief, the Mouas may claim they rescinded the loan approximately one (1) year after closing, and that as a result, they have no further obligations to Rand pursuant to the Note and Mortgage.

62.     Rand, however, performed its obligations under the Note and Mortgage by making a loan of $245,000.00, and by doing so, allowed them to redeem from a previous mortgage foreclosure sale. This redemption prevented a former mortgage holder from becoming the lawful owner of the Property and allowed the Mouas to remain in their home at all times relevant to this action.

63.     Despite numerous demands, the Mouas stopped making payments to Rand under the Note or Mortgage in December of 2005, and based upon the existence of the prior foreclosure, they likely didn't make any mortgage payments to their prior lender for another year. Despite the fact that a mortgage foreclosure sale occurred on the Property on May 4, 2006, that the statutory redemption period expired on November 4, 2006, and that Rand is now the lawful owner of the Property, the Mouas continue to exclusively occupy and possess the Property.

64.     As a direct result, the Mouas will be unjustly enriched if they are allowed to keep the benefits of Rand's performance, and exclusive use and ownership of the Property without reimbursing Rand for the benefits they received.

65.     Rand is therefore entitled to judgment against the Mouas in an amount in excess of $269,000.00, to be determined by the Court at trial.

**WHEREFORE,** Rand requests judgment as follows:

1.      Under Count I, adjudging and declaring that Rand did not violate TILA or HOEPA, that the Mouas did not have any continuing rescission rights to exercise beyond their three-day statutory period, and that Rand is now the fee owner of the Property and entitled to possession of the Property due to the completion of its foreclosure proceeding;

2.      Under Count II, in the alternative, adjudging and determining that the Mouas waived any rescission rights, if any, and that Rand is now the fee owner of the Property and entitled to possession of the Property due to the completion of its foreclosure proceeding;

3.      Under Count III, in the alternative, adjudging and determining that <u>if</u> the Mouas are entitled to a rescission under TILA, that the rescission be a conditional and mutual (and not unilateral) rescission as follows:

   a.   As an express condition of any rescission, and before Rand has any obligation to void the foreclosure sale, the Mouas must return the entire principal balance of the loan and any interest and other fees that accrued pursuant to the mortgage foreclosure sale, including $269,512.07 as of May 4, 2006 evidenced by the Sheriff's Certificate of Sale and Foreclosure Record, by a court-imposed date certain, together with interest that continues to accrue at the Note rate through the court-imposed date, and such other amounts as the court deems just and equitable to return the parties to their pre-contract positions, and

   b.   If the Mouas fail to timely satisfy the express court-imposed conditions, the foreclosure sale that occurred on May 4, 2006 will be valid and completed, and Rand will be declared the fee owner of the Property and entitled to immediate possession of the Property, and the Mouas shall be deemed to have waived any statutory right of rescission under TILA.

4.      Under Count IV, in the alternative, adjudging that the Mouas have been unjustly enriched at the expense of Rand, and that Rand is therefore entitled to judgment against the Mouas

for an amount in excess of $269,000.00 to be determined at trial; and

    3. Granting such other and further relief as the Court deems just and equitable.

**WILFORD & GESKE**

Dated: January 29, 2007    By:   _s/ Eric D. Cook_
Eric D. Cook, #218807
Christina M. Weber, #034963X
Attorneys for Plaintiff
7650 Currell Boulevard, Suite 300
Woodbury, Minnesota 55125
(651) 209-3300

15

# NOTE

APRIL 22, 2005                    MINNEAPOLIS                    MINNESOTA
[Date]                            [City]                         [State]

2438 ARLINGTON AVENUE EAST, MAPLEWOOD, MN 55119
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 245,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is RAND CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 13.990% UNTIL MAY 1, 2006 AT WHICH TIME I WILL PAY 14.990% YEARLY.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on JUNE 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 1, 20 10, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1433 UTICA AVE SOUTH, SUITE 265, ST LOUIS PARK, MN 55416 or at a different place if required by the Note Holder.

(B) **Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $2,883.55 UNTIL JUNE 1, 2006 AT WHICH TIME MY PAYMENT WILL INCREASE TO $3,272.04.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 320

EXHIBIT 1