RECEIVED

07 FEB 22  PH 3:43

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Rand Corporation,

Case Number: _07-cv-510_

        Plaintiff,

v.

Yer Song Moua and
Manisy Moua,

        Defendants and
        Party Plaintiffs,

v.

**ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT OF MANISY MOUA**

Rand Corporation, d/b/a/ Great Rates
Mortgage Co.,
Great Rates Mortgage Company,
Rand Financial Services, Inc.,
Peoples Bank of Commerce,
Patrick Aylward,
Collopy and Saunders, Real Estate, Inc.
d/b/a RE/MAX Results, and
RE/MAX Results

        Third-Party Defendants.

    Defendants and Third-Party Plaintiffs Yer Song Moua and Manisy Moua, for

their answer to Plaintiff's Complaint, admit, deny, and allege as follows:

SCANNED

FEB 2 2 2007

U.S. DISTRICT COURT MPLS

## FIRST DEFENSE

1.     The Mouas admit the allegation contained in Paragraph 1 of the Complaint.

2.     The Mouas admit the allegation contained in Paragraph 2 of the Complaint.

3.     The Mouas admit the allegation contained in Paragraph 3 of the Complaint.

4.     In response to Paragraph 4 of the Complaint, the Mouas state that they lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of the Paragraph.

5.     The Mouas admit the allegation contained in Paragraph 5 of the Complaint.

6.     The Mouas admit the allegation contained in Paragraph 6 of the Complaint.

7.     In response to Paragraph 7 to the Complaint, the Mouas admit that they applied for a mortgage loan on or about January 5, 2005, deny that the mortgage application was with Rand and admit the remainder of the allegation.

8.     The Mouas admit the allegation contained in Paragraph 8 of the Complaint.

9.     The Mouas admit the allegation contained in Paragraph 9 of the Complaint.

10.    In response to Paragraph 10 to the Complaint, the Mouas admit that, "To secure repayment of the indebtedness evidenced by the Note, the Mouas simultaneously executed and delivered a Mortgage, dated April 22, 2005," and that they lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations of the Paragraph.

11.    The Mouas deny the allegation contained in Paragraph 11 of the Complaint.

12.    The Mouas deny the allegation contained in Paragraph 12 of the Complaint

13.    The Mouas deny the allegation contained in Paragraph 13 of the Complaint

14.    The Mouas deny the allegation contained in Paragraph 14 of the Complaint

15.    The Mouas deny the allegation contained in Paragraph 15 of the Complaint and state that (a) Rand placed a typed form purporting to be a request to waive the 3-day advance HOEPA notice before Manisy Moua and asked her to copy it in cursive; (b) that the Mouas had no idea they were waiving any right to an advance notice by signing a waiver that was entirely prepared by Rand, (c) there was no personal financial emergency justifying the waiver of the 3-day advance HOEPA notice.

16.     The Mouas deny the allegation contained in Paragraph 16 of the Complaint and state that the waiver handwritten by Manisy Moua was copied from a typed statement prepared by Rand and placed before Manisy Moua and that she had no idea that she was waiving any right to notice or acknowledging their three-day right of rescission period after the closing.

17.     The Mouas deny the allegation contained in Paragraph 17 of the Complaint.

18.     The Mouas deny the allegation contained in Paragraph 18 of the Complaint.

19.     The Mouas deny the allegation contained in Paragraph 19 of the Complaint.

20.     The Mouas deny the allegation contained in Paragraph 20 of the Complaint.

21.     The Mouas deny the allegation contained in Paragraph 21 of the Complaint.

22.     In response to Paragraph 22 to the Complaint, the Mouas admit that they did not commence an action for damages on or before April 22, 2006, deny that they "attempted to" cancel and rescind their mortgage with Rand on or about April 11, 2006 and affirmative state that they did "cancel and rescind" their mortgage with Rand on or about April 11, 2006.

23.     The Mouas deny the allegation contained in Paragraph 23 of t0he Complaint.

4

24. The Mouas deny the allegation contained in Paragraph 24 of the Complaint.

25. In response to Paragraph 25 of the Complaint, the Mouas state that they lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of the Paragraph.

26. In response to Paragraph 26 of the Complaint, the Mouas state that they lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of the Paragraph.

27. The Mouas deny the allegation contained in Paragraph 27 of the Complaint.

28. The Mouas deny the allegation contained in Paragraph 28 of the Complaint.

29. In response to Paragraph 29 of the Complaint, the Mouas state that they lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 29.

30. In response to Paragraph 30 of the Complaint, the Mouas state that they lack sufficient knowledge or information of what constitutes the "above-described benefits" and therefore deny that they received "the above described benefits," and the Mouas admit that they failed to make timely monthly payments.

31. In response to Paragraph 31 of the Complaint, the Mouas admit that "Rand commenced a foreclosure by advertisement under Minnesota

5

statutes," and the Mouas state that they lack sufficient knowledge or information about what other documents were executed by Rand and therefore the Mouas deny the remainder of the allegation.

32.    The Mouas admit the allegation contained in Paragraph 32 of the Complaint.

33.    The Mouas admit the allegation contained in Paragraph 33 of the Complaint.

34.    The Mouas admit the allegation contained in Paragraph 34 of the Complaint.

35.    In response to Paragraph 35 of the Complaint, the Mouas admit that Eric Cook send a letter to the Mouas denying their rescission, the Mouas deny that their rescission was unsupported and that their loan file contained proper documentation, and the Mouas state that they lack sufficient knowledge or information to form a belief as to the truth or falsity of why Eric Cook denied the rescission by the Mouas.

36.    The Mouas deny the allegation contained in Paragraph 36 of the Complaint and the Mouas state that that the sheriff's sale had no legal effect, because the mortgage had been property rescinded.

37.    The Mouas deny the allegation contained in Paragraph 37 of the Complaint and the Mouas state that the sheriff's sale had no legal effect.

38.     In response to Paragraph 38 the Complaint, the Mouas restate and incorporates by reference their answers to Paragraphs 1-37 of the Complaint as fully set forth herein.

39.     The Mouas deny the allegation contained in Paragraph 40, 41, 42, 43, and 44 of the Complaint.

40.     In response to Paragraph 45 of the Complaint, the Mouas acknowledge that Plaintiff seeks declaratory relief, denies that Plaintiff is entitled to the relief requested, and otherwise denies all remaining allegations.

41.     In response to Paragraph 46 of the Complaint, the Mouas restate and incorporates by reference their answers to Paragraphs 1-45 of the Complaint as fully set forth herein.

42.     The Mouas deny the allegation contained in Paragraph 47 of the Complaint

43.     In response to Paragraph 48 of the Complaint, the Mouas state that they lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of the Paragraph 48 and so they deny the same.

44.     The Mouas deny the allegations in Paragraph 49 of the Complaint.

45.     In response to Paragraph 50 of the Complaint, the Mouas acknowledge that Plaintiff seeks a determination or declaratory relief, denies that Plaintiff is entitled to the relief requested, and otherwise denies all

remaining allegations.

46.     In response to Paragraph 51 of the Complaint, the Mouas restate and incorporate by reference their answers to Paragraphs 1-51 of the Complaint as fully set forth herein.

47.     The Mouas admit the allegation contained in Paragraph 52 of the Complaint.

48.     The Mouas admit the allegation contained in Paragraph 53 of the Complaint and affirmatively state that under 15 U.S.C. § 1635(b) and Reg. Z § 226.23(d)(1), the mortgage becomes void at the time the rescission notice is received and that the voiding of the mortgage is not subject the requirements stated in Paragraph 53.

49.     The Mouas admit the allegation contained in Paragraph 54 of the Complaint and affirmatively state that (a) rescission was intended to be a "painless remedy" for the consumer, "placing all burdens on the creditor," a purposeful departure from common law rescission, (b) the prospect that the consumer's tender obligation becoming an unsecured debt and perhaps uncollectible was built into TILA and that prospect alone does not justify equitable modification by the court, (c) to ensure the lender's performance, Congress explicitly provided for a fate worse than an unsecured debt if the borrower fails to receive tendered property or proceeds within twenty days; specifically, there is no longer any tender obligation; (d) routine modification in the extended right context is inappropriate lest rescission lose its value as an enforcement tool as creditors assume there are no

meaningful consequences for violating the law, and (e) the Mouas facing

foreclosure are confronted with a much greater forfeiture – loss of the family

home – than Rand now faces.

50.     In response to Paragraph 55 of the Complaint, the Mouas

acknowledge that Rand denies that the Mouas were entitled to statutory rescission,

and state that the portions of 15 U.S.C. § 1635, 12 C.F.R. 23, (2) and (3), and the

Official Staff Commentary stated in Paragraph 56 speak for themselves.

51.     In response to Paragraph 56 of the Complaint, the Mouas observe

that it merely recites portions of Regulation Z and the Official Staff Commentary;

to which no reply is necessary.

52.     In response to Paragraph 57 of the Complaint, the Mouas admit the

allegations in the first sentence in Paragraph 56, deny the allegations in the second

sentence in Paragraph 56, and deny the allegations in the third sentence in

Paragraph 56, and state that the 1980 TILA amendments allow the courts to alter

the rescission "procedures" relating to "Step 2", i.e., the lender's return any money

or property given by the consumer and the lender's obligation to take action to

terminate the security interest within 20 days of receipt of the notice of

cancellation, and "Step 3." i.e., once the creditor has performed, the consumer

must tender the property or loan proceeds (minus the finance charges, closing

costs, and payments made) to the lender, but the 1980 amendments do not allow

the courts to alter "Step 1," i.e., the security interest and obligation to pay finance

charges are automatically void if the consumer has rescinded the loan.

53.     The Mouas deny the allegation contained in Paragraph 58 of the Complaint and state that (a) Congress determined that the consequences are consistent with the serious harm that can occur if a consumer like the Mouas are not given the disclosures required by HOEPA and TILA prior to placing a mortgage on their home, and (b) Rand has access to excellent legal counsel, Wilford & Geske, so as to avoid any risk of non-compliance.

54.     In response to Paragraph 59 of the Complaint, the Mouas deny that Rand is entitled to the equitable relief requested for the reasons more particularly stated in the Moua's Counterclaim herein.

55.     In response to Paragraph 6o of the Complaint, the Mouas restate and incorporates by reference their answers to Paragraphs 1-59 of the Complaint as fully set forth herein.

56.     The Mouas admit the allegation contained in the first sentence in Paragraph 61 of the Complaint and the Mouas deny the allegation contained in the second sentence in Paragraph 61 of the Complaint.

57.     The Mouas deny the allegations in Paragraph 62 of the Complaint and states that Rand failed to perform its obligations under TILA and HOEPA and failed to provide the Mouas with an accurate payment amortization schedule, but instead provided the Mouas with a payment amortization schedule that guided the Mouas to overpay what they owed by over $12,000.00.

58.     In response to Paragraph 63 of the Complaint, the Mouas admit that they stopped making payments under the note and mortgage in December of 2005, and deny the remaining allegations in Paragraph 63.

59.     The Mouas deny the allegation contained in Paragraph 64 of the Complaint.

60.     The Mouas deny the allegation contained in Paragraph 65 of the Complaint.

## AFFIRMATIVE DEFENSES

61.     The Mouas incorporate by reference all allegations averred in Paragraphs 1– 60  herein.

62.     The Plaintiff failed to prosecute the mortgage foreclosure and the eviction in the name of the real party in interest, Peoples Bank of Commerce.

63.     The Plaintiff fails to state a claim upon which relief can be granted.

64.     Plaintiff's claims are barred by the doctrines of estoppel, waiver, laches, and unclean hands.

65.     Plaintiff's claims are barred by the doctrine of "unclean hands" and "in pari delicto."

## COUNTERCLAIMS AND
## THIRD PARTY CLAIMS

### Preliminary Statement

1.     This is an action brought by Hmong immigrants against a mortgage lender seeking rescission and statutory damages under the Home Ownership and Equity Protection Act of 1994 (hereinafter "HOEPA"), 15 U.S.C. §§ 1602(aa) and 1639, and the Truth in Lending Act, 15 U.S.C. § 1601 et seq. and § 1640(a).  In the alternative, the Mouas seek damages under the Minnesota Prevention of Consumer Fraud Act.  In addition, the Mouas seek an injunction prohibiting the mortgage lender from evicting the Mouas from their home.

### Parties, Jurisdiction, and Venue

2.     Jurisdiction of this Court exists pursuant to 15 U.S.C. § 1640(e) as to claims under HOEPA and the Truth-in-Lending Act ("TILA").  Jurisdiction of this Court exists as to the state law claims under 28 U.S.C. § 1367.

3.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

4.     Defendants and Third-Party Plaintiffs Yer Song Moua ("Mr. Moua") and Manisy Moua ("Mrs. Moua") (collectively "the Mouas") are a natural persons, husband and wife, residing at 2438 Arlington Avenue East, Maplewood, Minnesota 55119.

5.     Plaintiff Rand Corporation ("Rand") is a Minnesota corporation whose registered agent is Albert Miller and whose registered address is 1433 Utica Avenue South, Suite 265, St. Louis Park, Hennepin County, Minnesota 55416.

6.     Rand is licensed as a mortgage originator by the state of Minnesota.

7.     At all relevant times, Rand conducted retail consumer loan operations and regularly extended consumer credit payable by written agreement in more than four installments or for which a finance charge is imposed.

8.     Rand Financial, Inc. is a Minnesota Corporation affiliated with Rand Corporation and is licensed by the state of Minnesota as an Industrial Loan and Thrift.

9.     Patrick Aylward ("Aylward") is a natural person residing at 4645 Clinton Avenue South, Minneapolis, Minnesota 55419 and is a real estate agent duly licensed under the laws of Minnesota whose license is associated with RE/MAX Results.

10.    Collopy and Saunders, Real Estate, Inc. is a Minnesota corporation, d/b/a RE/MAX Results ("RE/MAX") whose registered office is 11200 W. 78th Street, Eden Prairie, Minnesota 55344 and whose registered agent is unknown to the Mouas.

11.    RE/MAX Results is licensed by the state of Minnesota as a real estate broker.

12.    Peoples Bank of Commerce is a bank with an office at 209 North Rum River Drive, Princeton, Mille Lacs County, Minnesota 55371-1609.

## **Factual Allegations**

### A. **Mouas Background**

13.    The Mouas are both Hmong immigrants to the United States.

14.     English is not the Moua's first language and they are not able to read the English language.

15.     The Mouas own the home located at 2438 Arlington Avenue East, Maplewood, Minnesota 55119, and legally described as:

Lot 7, Block 1, Oak Ridge Estates 3rd Addition

which since their purchase of the home has been and is the Moua's principal dwelling and homestead (herein "Home").

16.     Until the transaction with Plaintiff Rand, the home was subject to a mortgage with Mortgage Electronic Registration System, Inc. ("MERS").

17.     The Mouas fell behind on their mortgage payments because they felt obligated to pay for three funerals of close relatives.

18.     The law firm of Wilford & Geske, LLC. commenced mortgage foreclosure on behalf of MERS.

**B.  Facts Pertaining to Rand's Solicitation of the Mouas**

19.     Aylward introduced himself to the Mouas while placing his brochure in their mailbox.

20.     Aylward had an initial meeting with the Mouas at their Home.

21.     Aylward offered to help the Mouas get their house back from foreclosure and promised to assist the Mouas getting their mortgage payments "way down" and misrepresented that he had obtained financing for many people.

22.     At the time, Aylward was not exempt from being licensed as a mortgage originator.

23.     In January of 2005, the Mouas met with Aylward at Rand's office in St. Louis Park and, upon information and belief, the Mouas discussed a mortgage loan.

24.     After meeting with Aylward, Rand mailed the Mouas a loan application to complete and other disclosures.

25.     At the time the Mouas applied for a loan, Mr. Moua earned approximately $13.00 per hour as a laborer and Mrs. Moua earned approximately $1,000 - $2,000 per month operating a grocery store.

26.     Aylward had a pattern or practice of calling on persons in foreclosure, and identifying himself as a realtor who could help them sell their home and when the homeowner predictably expressed a desire to remain in the home, Aylward invariably referred them to Plaintiff Rand to obtain financing.

## C. Moua's Mortgage Closing with Rand

27.     A closing for the Moua's mortgage was scheduled for April 22, 2005.

28.     On April 22, 2005, the Mouas entered into a consumer credit transaction with Rand in which Plaintiff Rand extended consumer credit which was subject to a finance charge and which was initially payable to Rand.

29.     A true and correct copy of the Settlement Statement for the Moua's settlement is attached hereto as **Exhibit A**, and incorporated herein by reference.

30.     The Mouas obligated themselves on a promissory note ("Promissory Note") that the principal amount to be repaid was $245,500.00 and prescribed

interest at the rate of 13.99 percent with monthly payments of $2,883.55 for the first 12 months, followed by interest at the rate of 14.99 % with monthly payments of $ 3,272.04 until June 1, 2010, at which time a balloon payment became due.

31.    A true and correct copy of the Promissory Note is attached hereto as **Exhibit B**, and incorporated herein by reference.

32.    Rand acquired a security interest in the Moua's Home which was used as the Moua's principal dwelling of the Mouas.

33.    The Mouas paid off a second mortgage to MGIC Credit Assurance Corporation with a certified check in the amount of $50,000.00.

34.    A true and correct copy of the certified check is attached hereto as **Exhibit C**, and incorporated herein by reference.

35.    The Truth in Lending Disclosure stated that the annual percentage rate of 16.775 %, Finance Charge of $207,514.51, Amount Financed of $232,750.00, and a Total of Payments of $440,264.51.

36.    A true and correct copy of the Truth in Lending Disclosure is attached hereto as **Exhibit D**, and incorporated herein by reference.

37.    The Mouas were given an amortization schedule at the closing that overstated their actual balloon payment by over $12,000.00.

38.    A true and correct copy of the amortization schedule given to the Mouas is attached hereto as **Exhibit E**, and incorporated herein by reference.

39.    While signing loan documents, Mr. Moua asked the lady closer several times what the monthly payment would be and received no answer.

40. The mortgage note includes a prepayment penalty of 2 percent of the loan amount or 60 days interest if the loan is prepaid during the first 24 months.

41. At the closing, the Mouas were directed by the closer to sign the TILA Notice of Right to Cancel to acknowledge their receipt of this Notice and to pre-sign the confirmation portion of the Notice, confirming that more than 3 days had elapsed since the date of the new transaction and that they had not rescinded the transaction.

42. A true and correct copy of the Notice of Right to Cancel is attached hereto as **Exhibit K**, and incorporated herein by reference.

## D. **Attempted Waiver of the Three-day Advance HOEPA Disclosure**

43. The above-mentioned consumer credit transaction was a high rate mortgage within the meaning of HOEPA, 15 U.S.C. § 1602(aa)(1)(B), in that the total "points and fees" as defined in that section that Plaintiff Rand charged the Mouas exceeded 8 percent of the total loan amount or alternatively, in that the annual percentage rate at consummation of the transaction exceeded by more than 8 percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which Plaintiff Rand received the Mouas credit application.

44. Because the transaction described herein met the HOEPA definition of a high rate mortgage, the transaction was subject to additional HOEPA Disclosure requirements that must be provided three business days prior to

consummation of the transaction. 15 U.S.C. § 1639(b). (herein "HOEPA Disclosure").

45.     Rand did not provide the Mouas with the 3-day advance HOEPA Disclosure required by 15 U.S.C. § 1639 three business days prior to consummation of the transaction.

46.     At the closing, Rand attempted to have the Mouas waive their right to the 3-day advance HOEPA Disclosure.

47.     The HOEPA regulations, specifically, 12 C.F.R. 226.31(c)(iii), allow a borrower to waive their right to the 3-day advance HOEPA Disclosure12 C.F.R. 226.31(c)(iii) when necessary to permit the homeowners to meet a "bona fide personal financial emergency."

48.     Here, Rand drafted a typed statement purporting to be a request by the Mouas that the 3-day advance Disclosure be waived.

49.     A true and correct copy of the typed statement is attached hereto as **Exhibit F**, and incorporated herein by reference.

50.     The stated reason justifying waiver of the 3-day advance HOEPA Disclosure was that, "Prior to the closing of this transaction, because we are aware that the [Ramsey] County has not been timely in returning the payoff statement on our Mortgage and the current foreclosure proceeding."

51.     The closer told Mrs. Moua to copy a typed statement written in Mrs. Moua's own handwriting and then directed her and Mr. Moua to sign it.

52.     Mrs. Mouas did not know what the typed statement said or why she was asked to copy it in her own handwriting.

53.     On the day of closing, there were 41 days remaining in their redemption period before the Mouas would forfeit the Home to MERS.

54.     The stated basis for waiver did not justify waiver of the advance HOEPA Disclosure, because the Mouas had no "bona fide personal financial emergency" and the waiver was entirely concocted by Rand to avoid providing the Mouas with The above-mentioned consumer credit transaction was a high rate mortgage within the meaning of HOEPA, 15 U.S.C. § 1602(aa)(1)(B), in that the total "points and fees" as defined in that section that Plaintiff Rand charged the Mouas exceeded 8 percent of the total loan amount or alternatively, in that the annual percentage rate at consummation of the transaction exceeded by more than 8 percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which Plaintiff Rand received the Mouas credit application.

55.     Because the transaction described herein met the HOEPA definition of a high rate mortgage, the transaction was subject to additional HOEPA Disclosure requirements that must be provided three business days prior to consummation of the transaction. 15 U.S.C. § 1639(b). (herein "HOEPA Disclosure").

56.    Rand did not provide the Mouas with the 3-day advance HOEPA Disclosure required by 15 U.S.C. § 1639 three business days prior to consummation of the transaction,

57.    The above-mentioned consumer credit transaction was a high rate mortgage within the meaning of HOEPA, 15 U.S.C. § 1602(aa)(1)(B), in that the total "points and fees" as defined in that section that Plaintiff Rand charged the Mouas exceeded 8 percent of the total loan amount or alternatively, in that the annual percentage rate at consummation of the transaction exceeded by more than 8 percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which Plaintiff Rand received the Mouas credit application.

58.    Because the transaction described herein met the HOEPA definition of a high rate mortgage, the transaction was subject to additional HOEPA Disclosure requirements that must be provided three business days prior to consummation of the transaction. 15 U.S.C. § 1639(b). (herein "HOEPA Disclosure").

59.    Rand did not provide the Mouas with the 3-day advance HOEPA Disclosure required by 15 U.S.C. § 1639 three business days prior to consummation of the transaction,

60.    The above-mentioned consumer credit transaction was a high rate mortgage within the meaning of HOEPA, 15 U.S.C. § 1602(aa)(1)(B), in that the total "points and fees" as defined in that section that Plaintiff Rand charged the

Mouas exceeded 8 percent of the total loan amount or alternatively, in that the annual percentage rate at consummation of the transaction exceeded by more than 8 percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which Plaintiff Rand received the Mouas credit application.

61.    Because the transaction described herein met the HOEPA definition of a high rate mortgage, the transaction was subject to additional HOEPA Disclosure requirements that must be provided three business days <u>prior</u> to consummation of the transaction. 15 U.S.C. § 1639(b). (herein "HOEPA Disclosure").

62.    Rand did not provide the Mouas with the 3-day advance HOEPA Disclosure required by 15 U.S.C. § 1639 three business days prior to consummation of the transaction,

63.    Rand wanted to avoid having to provide the Mouas information about their loan terms prior to closing.

64.    A true and correct copy of the hand-written statement copied in Mrs. Moua's own handwriting is attached hereto as **Exhibit G**, and incorporated herein by reference.

65.    After all of the loan documents were signed, Mr. Moua discovered that their monthly loan payments would be significantly higher than Aylward and Miller represented.

66.     Mr. Moua was overcome by anxiety and stress because he knew that making the scheduled payments would be close to impossible for their family.

67.     After the closing, Mr. Moua began working constantly and rarely slept.

68.     Within weeks, Mr. Moua had a heart attack and a stroke and, as a result, has been declared totally disabled and unable to work and he receives a disability payment from the federal government.

69.     The heart attack and stroke were caused by the stress and anxiety of the transaction with Rand.

70.     Upon information and belief, Rand has engaged in a pattern or practice of extending credit to consumers under high rate mortgages, as defined by 15 U.S.C. § 1602(aa), based on the consumer's collateral without regard to the Moua's repayment ability, including their current and expected income, current obligations and employment, in violation of 15 U.S.C. § 1639(h).

71.     Rand required the Mouas or induced them to borrow substantially more money than they were seeking, and in an amount beyond their ability to repay, based primarily on Rand's evaluation of the amount of the Moua's equity in their Home.

72.     The content and form of the HOEPA Disclosure, prescribed in 12 C.F.R. § 226.32(b), requires the lender to provide the borrower with certain disclosures stating:

In addition to other disclosures required by this part, in a mortgage subject to this section, the creditor shall disclose the following in conspicuous type size:

(1) Notices. The following statement: "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do no meet your obligations                under                the                loan."

(2) Annual percentage rate. The annual percentage rate.

(3) Regular payment; balloon payment. The amount of the regular monthly (or other periodic) payment and the amount of any balloon payment. The regular payment disclosed under this paragraph shall be treated as accurate if it is based on an amount borrowed that is deemed accurate and is disclosed under paragraph (c)(5) of this section.

(4) Variable-rate. For variable-rate transactions, a statement that the interest rate and monthly payment may increase, and the amount of the single maximum monthly payment, based on the maximum interest rate required to be disclosed under § 226.30.

(5) Amount borrowed. For a mortgage refinancing, the total amount the consumer will borrow, as reflected by the face amount of the note; and where the amount borrowed includes premiums or other charges for optional credit insurance or debt-cancellation coverage, that fact shall be stated, grouped together with the disclosure of the amount borrowed. The disclosure of the amount borrowed shall be treated as accurate if it is not more than $100 above or below the amount required to be disclosed.

73.     By having the Mouas waive their HOEPA Disclosure, Miller

ensured that the Mouas will have no information about the financing terms they

will encounter at the closing table.

74.     Rand failed to deliver all the "material" disclosures required by the

Truth in Lending Act to the Mouas in connection with this transaction.  In

particular, Plaintiff Rand failed to furnish the required HOEPA disclosures to the

Mouas three days prior to their settlement and the HOEPA Disclosure provided to the Mouas at closing was deficient.

75.     Despite the waiver, Rand was obligated to providing the Mouas with a properly completed HOEPA Disclosure at the time of closing.

76.     A true and correct copy of the HOEPA Disclosure provided to the Mouas at closing is attached hereto as **Exhibit H**, and incorporated herein by reference.

77.     The HOEPA Disclosure provided to the Mouas at the closing by Rand does not comply with the requirements of HOEPA in that:

      a. The required statement is not disclosed in conspicuous type size;

      b. The Annual Percentage Rate is grossly over-stated;

      c. Rand fails to list the monthly payment of $3,272.04 as a "regular monthly payment;"

      d. The balloon payment is overstated by over $12,000.00; and

      e. The maximum monthly payment is overstated by $242,050.00.

78.     The TILA Disclosure provided to the Mouas at closing overstates material disclosures beyond allowed tolerances.

79.     Because of the invalid waiver of the attempt the 3-day advance HOEPA Disclosure, having the Mouas confirm that the three days to rescind had passed at the closing, prior to the time it had passed, the deficient and inaccurate HOEPA Disclosure provided to the Mouas at closing, and because of the inaccurate material disclosures beyond allowed tolerances of HOEPA and TILA

listed above, the Mouas retained the right to rescind the transaction up to three years after its consummation.

**E. Rescission by the Mouas**

80.    On April 11, 2006, the Mouas rescinded the transaction by sending a notice of rescission to Rand and to Peoples Bank of Commerce.

81.    A true and correct copy of the notice of rescission is attached hereto as **Exhibit I**, and incorporated herein by reference.

82.    Rand received the Moua's notice of rescission on April 13, 2006.

83.    A true and correct copy of the receipt by certified mail is attached hereto as **Exhibit C**, and incorporated herein by reference.

**F.    Rand's Failure to Perform**

84.    More than twenty days have passed since the Mouas rescinded the transaction and (a) Rand has failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. § 1635(b) and Regulation Z, § 226.23(d)(2), and (b) Rand has failed to return to the Mouas any money or property given by the Mouas to anyone, including Rand, as required by 15 U.S.C. § 1635(b) and Regulation Z, § 226.23(d)(2).

85.    The Moua's mortgage with Rand was assigned by Rand to Peoples Bank of Commerce.

86.     Despite this assignment, Rand has prosecuted the foreclosure and an eviction against the Mouas in its own name, which eviction is identified as Ramsey County Housing Court File No. C8-06-11875.

**G.  Eviction of the Mouas**

87.     Rand has schedule to move the Mouas out of their Home on Friday, February 23, 2007.

88.     The Mouas will suffer irreparable harm if they are dispossessed from their Home.

## COUNT I
## Rescission and Damages under HOEPA and TILA

89.     Defendants and Third-Party Plaintiffs, the Mouas, re-allege all prior paragraphs of this Complaint.

90.     Rand had the Mouas improperly confirm in writing on the Notice of Right to Cancel that (a) three days since the closing had already passed and (b) the Mouas did rescind the loan; that improper conduct entitles the Mouas to actual and statutory damages and it extended the Moua's right to rescind the transaction until up to three years after its consummation.

91.     Rand's lending to the Mouas based was on their collateral, without regard to their repayment ability, was part of a pattern or practice of such lending and violates 15 U.S.C. § 1639(h), entitles the Mouas to actual and statutory damages under 15 U.S.C. § 1640(a).

92.     Rand's attempt to have the Mouas waive their right to the 3-day advance HOEPA Disclosure was wholly without proper legal basis, since the Mouas had no "bona fide personal financial emergency" and Rand's failure to give the Mouas the disclosures required by HOEPA Disclosure three days prior to settlement violates 15 U.S.C. § 1639(a) and (b), entitles the Mouas to actual and statutory damages under 15 U.S.C. § 1640(a) and extending their right to rescind the transaction until up to three years after its consummation.

93.     Rand's failure to provide the Mouas with a properly completed HOEPA Disclosure with all of the required information properly formatted in accordance with HOEPA entitles the Mouas to actual and statutory damages under 15 U.S.C. § 1640(a) and extending their right to rescind the transaction until up to three years after its consummation.

94.     Rand's inclusion of a prepayment penalty in the Moua's mortgage when Rand did not fulfill the 5 conditions to permitting a prepayment a penalty violates 15 U.S.C. § 1639(c)(1) and (2), entitles the Mouas to actual and statutory damages under 15 U.S.C. § 1640(a) and extending their right to rescind the transaction until up to three years after its consummation.

95.     Rand's failure to deliver all the material disclosures required by the Truth in Lending Act to the Mouas in connection with the transaction violates 15 U.S.C. § 1638, entitles the Mouas to actual and statutory damages under 15 U.S.C. § 1640(a) and extending their right to rescind the transaction until up to three years after its consummation.

96.     Rand's failure to take the action necessary and appropriate to reflect the termination of the security interest within 20 days after the Moua's rescission of the transaction violates 15 U.S.C. § 1635(b) and entitles the Mouas to actual damages, statutory damages, and orders enforcing their rescission of the transaction.

97.     Wherefore, the Mouas pray for the court to recognize that their rescission is valid and timely, grant rescission, and award the Mouas their damages herein.

## COUNT II.
## Violation of the Consumer Fraud Act

98.     Defendants and Third-Party Plaintiffs, the Mouas, re-allege all prior paragraphs of this Complaint.

99.     At all relevant times, Minnesota has had statutes prohibiting unfair, false, misleading, and deceptive practices.  Minn. Stat. §325F.69 *et seq*.

100.    Minn. Stat. §8.31 allows consumers like the Mouas to bring claims for violation of Minn. Stat. §325F.69 et seq.

101.    The cause of action by the Mouas is in the public interest.

102.    The Minnesota Consumer Fraud Act, Minn. Stat. §325F.69 et seq., serves as a protection against unfair and deceptive trade practices, as described within, and provides, in pertinent part:

> Minn. Stat. §325F.69 Subdivision 1. Fraud, Misrepresentation, Deceptive practices.  The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or

deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

103.    Plaintiff Rand and Third-Party Defendants Great Rates Mortgage, Rand Financial Services, Inc., Patrick Aylward, and Collopy and Saunders, Real Estate, Inc, and RE/MAX Results, acting in concert, aiding and abetting one another, or acting on their own initiative and resolve, acted, used or employed a fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice by:

     a. Violating HOEPA as more particularly described above;

     b. Violating TILA as more particularly described above;

     c. Violating Minn. Stat. § 58.137, subd. 1, by financing (adding to the loan principal amount) lender fees that cumulatively exceed 5 percent of the loan amount.

     d. Aylward represented to the Mouas that their monthly mortgage payment after refinancing will be less than their current monthly mortgage payment.

     e. Aylward  misrepresented that had helped many consumers obtain financing in the past.

     f. Aylward misrepresented that he was contacting the Mouas to determine if they wanted to sell their home.

     g. Aylward misrepresented that he would use his judgment to select a lender, when in fact he refers all persons in foreclosure to Rand;

     h. Aylward failed to provide Mouas with the disclosure required by Minn. Stat. § 58.15, to clearly indicate to the Mouas that Aylward was not acting as their agent.

i.  Aylward collected a fee for acting as a broker when he performed no services other than referring the Mouas to Rand;

j.  Aylward acted as a broker without a mortgage originator's license or alternatively, as a person who is except from licensure while not in compliance with the requirements to enjoy exempt status.

k.  Collopy and Saunders, Real Estate, Inc, and RE/MAX Results failed to ensure that Aylward qualified as an exempt person, and that he met fulfilled his legal obligation when acting as mortgage originator.

l.  Rand Financial Services, Inc. received a fee and Rand Corporation paid a fee to an entity that did nothing to assist the Mouas in getting a mortgage loan.

m.  Violating Minn. Stat. § 58.13, subd. 1, specifically:

> (8) violating any provision of any other applicable state or federal law regulating residential mortgage loans, specifically the state and federal laws cited above.

> (9) making or causing to be made, directly or indirectly, any false, deceptive, or misleading statements or representations in connection with a residential loan transaction, specifically representing to the Mouas that their monthly mortgage payment after refinancing will be less than their current monthly mortgage payment.

> (13) making or assisting in making if a residential mortgage loan to the Mouas with the intent that the loan will not be repaid and that the residential mortgage originator will obtain title to the property through foreclosure;

104.   Rand's and Third-Party Defendants' representations, conduct, omissions, statements of fact, and assertions more particularly described herein were intended to induce the Mouas to enter into the transaction with the Defendants and to further the Defendants' unlawful scheme to strip the equity from the Mouas of their equity in their Home.

105.    Rand's and Third-Party Defendants' representations, conduct and omissions constituted an unfair and deceptive practice under Minn. Stat. §325F.69 *et seq.*

106.    Rand's and Third-Party Defendants' representations, conduct, omissions, statements of fact, and assertions more particularly described herein described above had the tendency to deceive and were deceptive, misleading and unfair.

107.    Rand's and Third-Party Defendants' representations, conduct, omissions, statements of fact, and assertions more particularly described herein were misleading and deceptive, and done with the intent that the Mouas would rely on those acts, statements and/or omissions to their detriment.

108.    By reason of the foregoing, Rand's and Third-Party Defendants' violated laws prohibiting deceptive practices stated in Minn. Stat. §325F.69 et seq.

109.    Any profits, sums, fees, interest, things of value, and/or other benefits, which Rand's and Third-Party Defendants' obtained from the foregoing conduct, should be disgorged, as it would be unjust and unfair for Defendants to retain them.

110.    By reason of the foregoing, the Mouas have been injured and are entitled to recover, and they hereby seek to collect from Defendants actual damages, restitution, the disgorgement of any and all prohibited, improper and excessive fees collected, damages for pain and suffering due to their resulting depression and  anxiety as a result of the transaction, as well as any and all other

amounts, damages or penalties allowed to be recovered by law, reasonable attorney fees and costs, and any other general or specific relief to which the Mouas may be entitled.

111.   In addition to damages suffered and other relief sought, the Mouas seek injunctive relief and pray that the Court declare Rand's and Third-Party Defendants' practices unlawful, force the Rand's and Third-Party Defendants' to account for and recalculate each payment, cost or expense charged and collected incident to the transactions, and award the Mouas their damages resulting from the Defendants' conduct, including the damages for the disability resulting from the heart attack and stroke of Mr. Moua, and refund to the Mouas the unlawful and fraudulent payments and expenses charged and collected, along with all other relief and award to which the Mouas may be entitled, or as determined to be just and appropriate by this Court.

112.   As a result of their reliance, the Mouas damaged by the Rand's and Third-Party Defendants' in an amount in excess of $50,000.00, including damages for medical related expenses and non-economic damages for pain and suffering caused by the transaction with the Rand the exact amount of which is to be determined at trial, exemplary damages, costs and disbursements, including costs of investigation and reasonable attorney's fees, and is entitled to receive other equitable relief as determined by the court under Minn. Stat. §8.31, subd. 3a. and an injunction (a) prohibiting the Plaintiff Rand and Peoples Bank of Commerce from engaging in any HOEPA mortgage loans with Minnesota consumers where

the 3-day advance HOEPA Disclosure is waived and (b) prohibiting Rand or

Peoples Bank of Commerce from evicting the Mouas or taking any action to

dispossess them.

WHEREFORE, Mouas pray for the following relief:

### (HOEPA and TILA)

a. Rescission of the transaction, including a declaration that the Mouas are not liable for any finance charges or other charges imposed by Promissory Note to Plaintiff Rand or assignee Third-Party Defendant Peoples Bank of Commerce;

b. A declaration that the security interest in Moua's property created under the transaction is void, and an order requiring Defendants to release such security interest;

c. Return of any money or property given by the Mouas to anyone, including the Plaintiff Rand or any other party in connection with the transaction;

d. Statutory damages of $6,000.00(consisting of $2000 for the disclosure violation, $2000 for the failure to rescind, and $2000 for including a prepayment penalty in the mortgage terms and for making a HOEPA mortgage loan without regard to repayment ability; and $2,000 for having the Mouas confirm that they did not rescind the loan prior to the passage of the 3-days to rescind;

e. Additional damages pursuant to 15 U.S.C. § 1640(a)(4) in the amount of all finance charges and fees paid by Mouas, for each non-disclosure violation;

f. An order that, because Rand's failed to act in response to the Moua's notice of rescission, Mouas have no duty to tender the loan proceeds to the Plaintiff Rand or the Third-Party Defendant Peoples Bank of Commerce, but in the alternative, if tender is required, a determination of the amount of the tender obligation in light of all of the Moua's claims, and an order requiring Rand or People's Bank of Commerce accept tender on reasonable terms and over a reasonable period of time;

g. Actual damages in an amount to be determined at trial;

h. An award of reasonable attorney fee and costs.

### (Minnesota Prevention of Consumer Fraud Act)

i. Actual damages of an amount in excess of $50,000 the exact amount of which shall be determined at trial;

j. An injunction (a) prohibiting the Plaintiff Rand or Third-Party Defendant Peoples Bank of Commerce from engaging in or taking an assignment of any HOEPA mortgage loans with Minnesota consumers where the 3-day advance HOEPA Disclosure is waived and (b) prohibiting Rand and People's Bank of Commerce from evicting the Mouas or taking any action to dispossess them.

k. An award of reasonable attorney fee and costs.

### (All Claims)

m. Such other relief at law or equity as this Court may deem just and proper.

Dated: February 21, 2007

JOHN M. TANCABEL
LAW OFFICE

By

John M. Tancabel (#108273)
895 Osceola Avenue
St. Paul, Minnesota 55105
(651) 224-1244
*Attorney for the Defendants and*
*Third-Party Plaintiffs*