# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Rand Corporation,

        Plaintiff,

v.

Yer Song Moua and
Manisy Moua,

        Defendants and
        Party Plaintiffs,

v.

Rand Corporation, d/b/a/ Great Rates
Mortgage Co.,
Great Rates Mortgage Company,
Rand Financial Services, Inc.,
Peoples Bank of Commerce,
Patrick Aylward,
Collopy and Saunders, Real Estate, Inc.
d/b/a RE/MAX Results, and
RE/MAX Results

        Third-Party Defendants.

Civil Action No. 07cv510(ADM/JSM)

**MEMORANDUM OF LAW
OPPOSING RAND
CORPORATION'S MOTION FOR
SUMMARY JUDGMENT**

Defendants Yer Song Moua and Manisy Moua, ("the Mouas ), respectfully submit this Memorandum in opposition to Rand Corporation's Motion for Summary Judgment.

## INTRODUCTION

The Mouas obtained a high-cost, high-interest rate refinance mortgage from Rand Corporation ("Rand ) covered by the Home Ownership and Equity Protection Act of 1994 (hereinafter "HOEPA"), 15 U.S.C. §§ 1602(aa) and 1639, and the Truth in Lending Act (hereinafter "TILA ), 15 U.S.C. § 1601 et seq. and § 1640(a). Moua Counterclaim ¶ 43.

Rand seeks summary judgment on Count I of its Complaint, specifically that (1) Rand fully complied with TILA and HOEPA notice obligations and gave the Mouas proper notice of their rescission rights on April 22, 2005; (2) the Mouas failed to timely exercise any rescission rights by midnight on April 26, 2005; (4) (*sic*) Rand's Mortgage and its subsequent foreclosure of the Mortgage were valid and enforceable; (5) Rand is the lawful owner of the Property due to the expiration of the statutory redemption period.

Among other requirements, HOEPA requires that the lender give an additional disclosure to the borrower ("HOEPA Disclosure  or "Advance Disclosure ) "at least three business days prior to the date of consummation containing prescribed information about the mortgage loan terms. 15 U.S.C. § 1639(b)(1).

Rand's Motion for summary judgment should be denied on the following grounds:

2

(1) Rand failed to provide the Advance Disclosure required by HOEPA three business days in advance of closing;

(2) the HOEPA Disclosure Rand provided to the Mouas at closing was wholly inadequate, because it contained inaccurate information and failed to include all of the required information required by HOEPA;

(3) Rand's attempt to have the Mouas waive Rand's obligation to provide the Mouas with the HOEPA Disclosure three days in advance of closing ineffective, because the Mouas had no "personal financial emergency,  and

(4) the Mouas' premature acknowledgement on the day of closing that "[m]ore than 3 business days have elapsed since the date of the new transaction constituted in improper waiver of the three days to rescind required by TILA.

Moreover, Rand's failures entitle the Mouas to rescind their mortgage up to three years from the date of consummation and the Mouas did timely rescind that mortgage.

Finally, a summary judgment is precluded because Rand has not demonstrated the absence of any a genuine issue of a material facts, and Rand is not entitled to summary judgment as a matter of law.

## UNDISPUTED FACTS

The Mouas are Hmong immigrants with very limited English language comprehension. Vong Aff.¶ 9. M.Moua Aff. ¶ 3, 19. Early 2005, the Mouas' current mortgage lender, MERS, commenced mortgage foreclosure through the law firm of Wilford & Geske. M.Moua Aff. ¶ 7; Moua Counterclaim ¶ 18. The Mouas defaulted because the Mouas paid for the funerals of three relatives. Moua Counterclaim ¶ 17; M.Moua Aff. ¶ 6.

3

The Mouas were approached by Pat Aylward, a realtor with RE/MAX Results. Moua Counterclaim ¶ 19 – 21; M.Moua Aff. ¶ 8 – 11. Aylward referred the Mouas to Rand and Albert Miller. The Mouas applied for a mortgage from Rand by signing a blank mortgage loan application and giving it to Albert Miller. M.Moua Aff. ¶ 12 and 13.

Miller, the principal executive for Rand Corporation and Rand Financial, Inc., was much more sophisticated at residential real estate and finance than the Mouas. Miller formerly held a real estate broker's license. Miller's marketing brochure boasts that he "has over twelve years experience in the real estate and real estate financing industries. [Miller] owned a successful multi-store retail operation. [Miller] also has experience buying, selling and managing residential real estate property. Moua Ex. L. Further, Rand is licensed by the state of Minnesota as a mortgage originator and Rand Financial, Inc. is licensed as an industrial loan and thrift. Moua Counterclaim ¶ 6. 8.

The closing on the Mouas' refinance mortgage with Rand was scheduled for April 22, 2005. Moua Counterclaim ¶ 27; M.Moua Aff. ¶ 18. On that date, there were 41 days remaining in the Mouas' foreclosure redemption period.

On April 22, 2005, the Mouas attended a closing and obtained a refinance mortgage from Rand Corporation for $245,000.00 secured by a mortgage in their Home ("Mortgage ). Moua Counterclaim ¶ 28; M.Moua

4

Aff. ¶ 18.  The terms of the mortgage Rand provided the Mouas are shown below in Table 1.  Moua Ex. B.

Table 1

| | TERMS |
|---|---|
| Mortgagee | Rand Corporation |
| Principal Amount | $245,000.00 |
| Interest Rate | 13.99 % for the first twelve months, followed by 14.99 % for the next forty-nine months. |
| Monthly Payment | $2,883.55 per month for the first twelve months, followed by $3,272.04 per month for next forty-nine months. |
| Balloon Payment | July 1, 2010 |
| Prepayment Penalty | The lesser of 2 % of the principal balance or 60 days interest if prepaid within 24 months. |

The closing costs and fees set forth in the Settlement Statement are shown in Table 2.  Moua Ex. A.

Table 2

| Fees Charged to the Mouas: | The Fees Were Paid to: | Percent of Mortgage Amount | TERMS |
|---|---|---|---|
| Commitment Fee | Rand Corporation | 1.5 % | $3,675.00 |
| Loan       Origination Fee | Rand Financial, Inc. | 1.4 % | $3,675.00 |
| Mortgage       Broker Fee | RE/MAX Aylward Group | 1.85 % | $4,521.61 |
| TOTAL: | | | $11,871.61 |

HOEPA requires that the lender give an additional disclosure to the borrower ("HOEPA Disclosure ) "at least three business days prior to the date of consummation.  15 U.S.C.  §  1639(b)(1).   The Mouas did not receive the three-day advance HOEPA Disclosure prior to attending the closing on April 22, 2005. Rand Complaint ¶  15. Rand sent typed closing instructions to the settlement agent instructing her that "prior to starting this closing the customer needs to make a statement similar to the following in their own handwriting, sign and date.  Moua Ex. F.   The statement stated:

> We are aware that we are entitled to a 3-day review of the disclosures prior to closing of this transaction.  Because we are aware that the county has not been timely in returning the payoff statement on our mortgage and the current foreclosure

> proceedings we request that this 3 day review period be waived.
>
> We are further aware that we have a 3 day recession (sic) after signing the closing docs to review all the final documents. We feel that this will allow us time to address any concerns or questions.
>
> Please accept our request to waive the 3-day review period.

Pursuant to Rand's closing instructions, the Rand settlement agent placed the typed statement near Mrs. Moua and directed her to copy the typed statement in her own handwriting. Moua Counterclaim ¶ 51; M.Moua Aff. ¶ 23. Mrs. Moua could write in English but was not able to read what she copied. M.Moua Aff. ¶ 23. Mrs. Moua copied the statement as she was instructed to do by the settlement agent. M.Moua Aff. ¶ 23. Once this was done, the settlement agent directed Mr. and Mrs. Moua to sign the hand-written statement. M.Moua Aff. ¶ 51.

At closing, the Mouas were given a document entitled "TRUTH-IN-LENDING DISCLOSURE (FOR SECTION 32 MORTGAGES) which purported to be Rand's HOEPA Disclosure. Moua Counterclaim ¶ 56 and 59. Rand Complaint ¶11.

The Mouas were also given a Notice of Right to Cancel. Moua Counterclaim ¶ 41. Moua Ex. K; M.Moua Aff. ¶ 25. The Mouas signed and dated the signature line to acknowledge receipt of the Notice Moua Counterclaim ¶ 41; In addition, the Mouas were directed to sign and they signed and dated the bottom line, indicating that:

> More than 3 business days have elapsed since the date of the
> new transaction and I/We received this Notice and Truth-In-
> Lending disclosures with regard to the new transaction. I/We
> certify that the new transaction has not been rescinded.

M.Moua Aff. ¶ 25.

The Mouas claim that Rand's settlement agent refused to answer Mr.
Moua's questions about the Mortgage's monthly payment. Moua
Counterclaim ¶ 39; Vong Aff. ¶ 8. The Mouas returned home after the
closing and reviewed the mortgage documents with his son, Vong, who is
fluent in the English language. Vong Aff. ¶ 5; M.Moua Aff. ¶ 26. With
his son's assistance, Mr. Moua learned that the monthly mortgage
payments would be much higher than previously represented and that his
family Home was in jeopardy. M.Moua Aff. ¶ 27. Vong reviewed the
Notice of Right to Cancel with his father and concluded that the Notice of
Right to Cancel gave the Mouas no right to rescind after the closing.
M.Moua Aff. ¶ 28.

Fearful of losing the family Home, Mr. Moua then made a heroic
effort to earn enough money to pay the monthly payment and somehow
avoid default and loss of the Home. Vong Aff. ¶ 10. Mr. Moua worked at
his regular job and worked all overtime that was available. Vong Aff. ¶ 11,
12. Mr. Moua also worked additional hours at the family store, and slept
very little. Vong Aff. ¶ 12. Mr. Moua sustained a stroke and a heart attack

within weeks of the closing and has since been declared by the federal government to be totally disabled. Vong Aff. ¶ 14. M.Moua Aff. ¶ 31.

Despite Mr. Mouas' efforts, the Mouas predictably defaulted on their mortgage payments. Rand then commenced a mortgage foreclosure through the law firm of Wilford and Geske. Moua Counterclaim ¶ 86. Through the law firm of Wilford & Geske, Rand then sought to evict the eleven occupants of the Moua family from their Home. Moua Counterclaim ¶ 85. M.Moua Aff. ¶ 34, 35.

## DISPUTED MATERIAL FACTS

In the instant case, there exist several material facts which preclude the granting of summary judgment. The disputed material facts include the following:

1. When did the Mouas execute the Notice of Right to Cancel acknowledging that three days had passed since the closing and under what circumstances;

2. Whether the "bona fide emergency contained in the waiver was, in fact, a story concocted by Rand to allow Rand to avoid its statutory obligations to provide the three day notice.

Resolution of the above facts are dispositive on the following pertinent issues of this case:

1. Whether waiver signed by the Mouas at closing described a "personal financial emergency within the meaning of 12 C.F.R. 226.31(c)(iii) and, therefore, duly waived the three-day waiting period for the Mouas to receive the HOEPA Disclosure;

2. Whether the HOEPA Disclosure Rand provided to the Mouas contained the content required by HOEPA;

3.   Whether the Mouas were entitled to rescind up to three years from the date of consummation based on the invalid HOEPA waiver and defective HOEPA Disclosure; and

4.   Whether the Mouas' prematurely acknowledging that the three-days to rescind had passed on the Notice of Right to Cancel entitled the Mouas to rescind three years from the date of consummation.

Rand has not established that the material facts stated above are undisputed. Because Rand has not met its burden and because there are genuine issues of disputed material facts, Rand's motion for summary judgment must be denied.

## ARGUMENT

## I.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is neither an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a jury to weigh the evidence and to render credibility determinations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55, 91 L.Ed.2d 265 (1986).  A summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material and that the moving party is entitled to a judgment as a matter of law.   Rule 56, Federal Rules of Civil Procedure.

The moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its

favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir.1988)   Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In considering a motion for summary judgment, a court must assume that the nonmoving party's evidence is true and draw all justifiable inferences arising from the evidence in that party's favor. *Taylor v. White*, 321 F.3d 710, 715 (8th Cir.2003).

For these purposes, a disputed fact is "material  if it must inevitably be resolved and the resolution will determine the outcome of the cases, while a dispute is "genuine  if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "In determining whether a material factual dispute exists, the court views the evidence through a prism of the controlling legal standard. *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993).  If reasonable minds could differ as to the import of the evidence, however, summary judgment should not be granted and, in exercising its function, the court is not to weigh the evidence. *Anderson*, at 250-51, 106 S.Ct. at 2511-12; *AgriStor Leasing v. Farrow*, 826 F.2d 732,

11

734 (8th Cir. 1987).  Any issues regarding a material fact must be resolved in favor of the non-moving party. Id., at 247-48.

## II.   THE WAIVER SIGNED BY THE MOUAS AT CLOSING DID NOT DESCRIBE A "BONA FIDE PERSONAL FINANCIAL EMERGENCY" AS REQUIRED BY 12 C.F.R. 226.31(c)(iii) AND THEREFORE DID NOT WAIVE THEIR RIGHT TO RECEIVE THE HOEPA DISCLOSURE THREE-DAYS PRIOR TO CLOSING

HOEPA imposes certain restrictions and affirmative obligations on lenders making high annual percentage rates or with excessive costs and fees closed-end mortgage loans with ("HOEPA loans  or "Section 32 loans ).  HOEPA is an amendment to TILA, codified at section 15 U.S.C. § 1639 and at sections 31, 32, and 34 of Regulation Z (12 C.F.R. §§ 226.31, 226.32, 226.34.  HOEPA mandates that certain home equity mortgage loans that exceed either an annual percentage rate (APR) trigger or a "points and fees  trigger are subject to an additional consumer protections, including a three-day advance Miranda-like disclosure.  15 U.S.C. § 1639.  Further, HOEPA imposed prohibitions on certain abusive loan terms, and creditor practices; and increase statutory damages; and an extension of potential liability for assignees.

Unlike the TILA disclosures, which are generally given at the time the loan is signed, the HOEPA Disclosure must be given three business

days <u>prior</u> to consummation, so that the consumer will genuinely have time to try to absorb the information and reflect on the decision.  The HOEPA "APR trigger  and "points and fees trigger,  found at 15 U.S.C. §  1602 (aa)(1).

The TILA and HOEPA regulations allow a borrower to waive their (1) right to the three-day day waiting period for the right to rescind required by TILA,  and (2) right to the three-day waiting period for the Advance Disclosure required by HOEPA provided the borrower has a "bona fide personal financial emergency.  12 C.F.R. 226.31(c)(iii).

The regulations require a borrower to make the request for waiver in a hand-written statement identifying the "bona fide personal financial emergency  in order to avoid lender abuse and to make circumvention of these requirements more difficult.  No printed forms can be used to waive these rights.

In Paragraph 15 of its Complaint, Rand impliedly acknowledges that it did not provide the Mouas with the required HOEPA Disclosure three days prior to closing. Paragraph 15 reads:

> 15. Since TILA and HOEPA required Rand to give amended disclosures three clays before closing on April 22, 2005, the Mouas chose to waive their three-day waiting period based upon a bona fide personal financial emergency.

The Mouas did not "choose  to waive the three-day waiting period. Rand drafted a typed statement and sent it to its settlement agent as part of Rand's closing instructions.  Moua Ex. F. Mrs. Moua attests that she was directed by the Rand's settlement agent to copy of typed statement in her own handwriting and were directed to sign the hand-written statement. Moua Ex. G

The typed statement clearly directs the settlement agent that "the customer needs *to make* a statement similar to the following in their own handwriting, sign and date  indicates that it was a condition of obtaining the loan. (Emphasis added).

Regulation Z authorizes a waiver of rights when necessary to permit homeowners to meet "bona fide personal financial emergencies.  This means the three-day advance look at the prescribed notice can be waived in genuine, immediate financial emergencies; but the HOEPA disclosure themselves must be made <u>before</u> the waiver.  Rand has not and cannot provide any evidence that this was done.

The "bona fide personal financial emergency  language tracks that of rescission waiver provisions in the TILA, so presumably they should be interpreted consistently.

12 C.F.R.  226.31(c)(1)(iii) states:

The consumer may, after receiving the disclosures required by paragraph (c)(1) of this section, modify or waive the three-day waiting period between delivery of those disclosures and

consummation if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the waiting period, and bears the signature of all the consumers entitled to the waiting period. Printed forms for this purpose are prohibited, except when creditors are permitted to use printed forms pursuant to § 226.23(e)(2).

Paragraph 31(c)(1)(iii) of the Official Staff Commentary states:

A consumer may modify or waive the right to the three-day waiting period only after receiving the disclosures required by §226.32 and only if the circumstances meet the criteria for establishing a bona fide personal financial emergency under §226.23(e). Whether these criteria are met is determined by the facts surrounding individual situations. The imminent sale of the consumer's home at foreclosure during the three-day period is one example of a bona fide personal financial emergency. Each consumer entitled to the three-day waiting period must sign the handwritten statement for the waiver to be effective.

The waiver must be in a dated written statement which describes the emergency and which specifically modifies or waives the rescission period and which is signed by all consumers entitled to rescind. Printed forms for the purpose of waiver are prohibited. 15 U.S.C. § 1635(d);

The Board has suggested that if a foreclosure sale would take place within the three day waiting period, the sale may be grounds for a waiver. 60 Fed. Reg. 15465 (Mar. 24, 1995) (explanation of § 226.32(c)(1)(iii)). Official Staff Commentary § 226.31(c)(1)(iii)-1 states:

A consumer may modify or waive the right to the three-day waiting period only after receiving the disclosures required by section 226.32 and only if the circumstances meet the criteria for establishing a bona fide personal financial emergency under section 226.23(e).   Whether these criteria are met is determined by the factors surrounding individual situations. The imminent sale of the consumer's home at foreclosure during the three-day period is one example of a bona fide personal financial emergency.   Each consumer entitled to the three-day waiting period must sign the handwritten statement for the waiver to be effective.

Here, the typed statement copied by Mrs. Moua fails to identify any bona fide personal financial emergency justifying the waiver of the waiting period.   Moua Ex. R and G. Rand avers in Paragraph 14 of its Complaint that:

14.   Due to the pending redemption period set to expire in 41 days, the need to redo all loan documents, update all payoffs with other creditors, and the risk of losing loan approval if the closing were rescheduled past April 22, 2005, the Mouas made the decision on or about April 21, 2005 to proceed with the closing the next day.

With 41 days remaining in the redemption period, there is no emergency.   Regardless of how slow the Ramsey County Sheriff may be, 41 days is ample time to get the payoff amount.    Since the law firm of Wilford & Geske represented both the foreclosing lender, MERS, and Rand, Wilford & Geske could have obtained a prompt payoff figure, which they could pass on to the Ramsey County Sheriff.

Moreover, the fax documents Rand submitted to the court suggest that Rand received the payoff from the Ramsey County Sheriff on April 15, 2005, so there was adequate time to provide the HOEPA Disclosure three days prior to closing.

Here, the typed statement grounds the waiver on the availability of the three days to rescind under TILA.  If that were recognized as a valid basis for waiver, no borrower would ever receive the HOEPA Disclosure in advance of closing..

In addition, the Mouas did not include "the need to redo all loan documents, update all payoffs with other creditors, and the risk of losing loan approval if the closing were rescheduled past April 22, 2005,  in the hand-written request for waiver as a basis for the waiver.  Rand included that as the basis in their Complaint.  Even if the Mouas had included that as a basis for waiver, it would hardly constitute a bona fide personal financial emergency.

The risks described in the Mouas' waiver did not describe a "bona fide personal financial emergency.

## III.   THE HOEPA DISCLOSURE RAND PROVIDED TO THE MOUAS AT CLOSING FAILED TO CONTAIN ACCURATE INFORMATION AND FAILED TO CONTAIN THE CONTENT REQUIREMENTS OF HOEPA

The provisions of 15 U.S.C. § 1639(a)(1) and (2), shown below, prescribe the required content and format of the three-day advance HOEPA Disclosure.

(1) Specific disclosures

In addition to other disclosures required under this title, for each mortgage referred to in section 1602(aa) of this title, the creditor shall provide the following disclosures in conspicuous type size:

(A)    ''You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application.''

(B)    ''If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.''

(2) Annual percentage rate

In addition to the disclosures required under paragraph (1), the creditor shall disclose—

(A)    in the case of a credit transaction with a fixed rate of interest, the annual percentage rate and the amount of the regular monthly payment; or

(B)    in the case of any other credit transaction, the annual percentage rate of the loan, the amount of the regular monthly payment, a statement that the interest rate and monthly payment may increase, and the amount of the maximum monthly payment, based on the maximum interest rate allowed pursuant to section 3606 of Title 12.

Here, the Official Staff Commentary defines the "regular payment  as the amount due from the borrower at regular intervals, such as monthly, bimonthly, quarterly, or annually.  Official Staff Commentary § 226.32(c)(3)-1.

Table 3 below indicates, the HOEPA Disclosure provided to the Mouas at closing <u>overstated</u> APR of 18.776 % , <u>failed to disclose</u> a regular monthly payment of $3,272.04, <u>overstated</u> the balloon payment by $12,279.83, and <u>overstated</u> the "highest you payment could increase   as $245,331.93, the balloon payment, instead of disclosing $3,272.04.

Table 3

| REQUIREMENTS OF 15 U.S.C. § 1639(a)(2)(B) | RAND DISCLOSED: | RAND SHOULD HAVE DISCLOSED: |
|---|---|---|
| The annual percentage rate of the loan, | 18.776 % | % |
| The amount of the regular monthly payment | $2,883.55<br><br>At the end of your loan, you will still owe us:<br><br>$245,331.93. | $2,883.55 for 12 months<br>$3,272.04 for 49 months<br><br>At the end of your loan, you will still owe us:<br><br>$233,052.10 |
| The amount of the maximum monthly payment, based on the maximum interest rate allowed pursuant to section 3606 of Title 12. | The highest your payment could increase is:<br><br>$245,331.93 | The highest your payment could increase is:<br><br>$3,272.04 |

*See* Official Staff Commentary § 226.32(a) – (c) regarding the specificity required when the mortgage involves graduated payments.  The Federal Reserve Board Official Staff Commentary § 226.32(c)(3) (in pertinent part) states:

> 1. General.  The regular payment is the amount due from the borrower at regular intervals, such as monthly, bimonthly, quarterly, or annually.  There must be at least two payments, and the payments must be in an amount and at such interval that they fully amortize the amount owed.  In disclosing the regular payment, creditors may rely on the rule set forth in § 226.18(g);
>
>       * * *
>
> If the loan has more than one payment level, the regular payment for each level must be disclosed.  For example:
>
> A.   In a 30-year graduated payment mortgage where there will be payments of $300 for the fist 120 months, $400 for the next 120 months, and $500 for the last 120 months, each payment amount must be disclosed, along with the length of time that the payment will be in effect.
>
>       * * *

12 C.F.R. § 226.18(g) (in pertinent part) states:

The number, amounts, and timing of payments scheduled to repay the obligation.

Here, Rand's disclosure did not meet these requirements of HOEPA.

Further, the Mouas received only one copy of the HOEPA Disclosure at closing. HOEPA provides that the lender must give a copy of the HOEPA Disclosure to all consumer to whom the right to rescind applies. 12 C.F.R. 226.31(e). Rand has admitted that no Rand employee attended the closing, so Rand has no basis to deny allegation.

Thus, the HOEPA Disclosure provided to the Mouas at closing by Rand failed to meet the content requirements of HOEPA and provides a further basis for recognizing that the Mouas had the extended right to rescind.

## IV.   THE MOUAS WERE ENTITLED TO RESCIND THEIR RAND MORTGAGE UP TO THREE YEARS FROM THE DATE OF CONSUMMATION

As discussed above, putative waiver failed to describe a "personal financial emergency and therefore was wholly inadequate to waive the Mouas' right to the HOEPA Disclosure three days in advance of closing. Further, the HOEPA Disclosure given the Mouas at closing failed to include the correct information required by HOEPA. As a result, the

Mouas were entitled to rescind their mortgage three years from the date of consummation.

15 U.S.C. § 1635(a) states that the right to rescind continues "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later . . "

The "material disclosures   include the HOEPA disclosures.  As a result, a lender's failure to make the HOEPA Disclosure three days in advance of closing constitutes a failure to make "material disclosures under the amended Act.

15 .S.C. §  1602(u) states:

> The term ''material disclosures'' means the disclosure, as required by this subchapter, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, *and the disclosures required by section 1639(a) of this title.*

(Emphasis added.)

A lender's failure to make the material disclosures extends the rescission date up to three years after consummation.   15 U.S.C. §  1635(f) states:

> An obligor's right of rescission shall expire three years after
> the date of consummation of the transaction or upon the sale of
> the property, whichever occurs first, notwithstanding the fact
> that the information and forms required under this section or
> any other disclosures required under this part have not been
> delivered to the obligor, except that if (1) any agency
> empowered to enforce the provisions of this subchapter
> institutes a proceeding to enforce the provisions of this section
> within three years after the date of consummation of the
> transaction, (2) such agency finds a violation of this section,
> and (3) the obligor's right to rescind is based in whole or in
> part on any matter involved in such proceeding, then the
> obligor's right of rescission shall expire three years after the
> date of consummation of the transaction or upon the earlier
> sale of the property, or upon the expiration of one year
> following the conclusion of the proceeding, or any judicial
> review or period for judicial review thereof, whichever is later.

Thus, failure to properly make the HOEPA Notices prescribed in 15 U.S.C. § 1639(a) will give rise to an extended right to rescind the transaction for up to three years from the date of consummation. This should apply equally to failure to make the necessary disclosures and failure to follow the proper disclosure procedures required under section 1639(a).

For the foregoing reasons, the rescission of the Mouas was timely.

## V. THE MOUAS' PREMATURE ACKNOWLEDGMENT ON THE DATE OF CLOSING THAT THE THREE DAYS TO RESCIND HAD PASSED ENTITLED THE MOUAS TO RESCIND THEIR MORTGAGE UP TO THREE-YEARS FROM THE DATE OF CONSUMMATION OF THEIR RAND MORTGAGE

For "non-purchase  mortgages, the TILA requires that the lender provide the borrower a three-day right to rescind the mortgage loan.  15 U.S.C. §  1635(a); 12 C.F.R.  226.23.

Here, as part of the Notice of Right to Cancel, Rand, through its settlement agent, had the Mouas prematurely acknowledge at closing that the three business days to rescind had passed and they did not rescind. Moua Ex. K.

While Rand denies responsibility for its own settlement agent, there is no doubt that the Excel settlement agent was Rand's agent for purposes of the giving and receiving of notices and for obtaining signatures, etc. This must be so because TILA and Regulation Z require that "the creditor make all disclosures.  See 15 U.S.C. § 1638(a) ("the creditor shall disclose each of the following items ); 15 U. S.C. § 1631(b) ("[i]f a transaction involves one creditor ... , such creditor ... shall make the disclosures ); 12 C.F.R. § 226.17(a) ("[t]he creditor shall make the disclosures ).  Thus, the Excel settlement agent had to be Rand's agent for purposes of TILA.

Rand acknowledges that no Rand employees were at the closing. Thus, no Rand employee can provide support in affidavits about what occurred at the closing based on their personal knowledge. *Love v. Commerce Bank of St. Louis, N.A.,* 37 F.3d 1295, 1296 (8th Cir.1994) (Affidavit struck because the allegation contained therein... was not based on personal knowledge . . .).  Because no Rand employee has personal knowledge of how

the Mouas came to sign the premature acknowledgement, any claimed knowledge is simply rank speculation, which cannot be the basis of a summary judgment motion.

Both of the Mouas were present at the closing and they state that they were directed to sign the bottom signature line on the Notice of Right to Cancel.   Rand is obviously responsible for the torts of its agents in the course and scope of its agency.

The acknowledgement is dated the same date as the closing, which makes clear that the Mouas signed it on the day of closing, when the three-days to rescind were just beginning.

The fact that the disbursements were delayed until after the three days to rescind should have passed is irrelevant to the main issue of *whether the Mouas were misled by the premature acknowledgement after the closing.*   The language at the bottom of the Notice of Right to Cancel was not clear and conspicuous and was hopelessly conflicting.

Having the Mouas sign a premature acknowledgement that the three-day period to cancel had passed violates the TILA requirement that the consumer be given clear and conspicuous notice of the right to cancel.   15 U.S.C. §   1632(a); 12 C.F.R. 226.17(a).   The signing of the "premature acknowledgement,   a statement that is objectively false, conflicts with the simultaneous disclosure of the three-day rescission period.

The clear import is that by signing it the consumer can no longer exercise the right to cancel. That is exactly what the Mouas concluded once they reviewed the loan document with their son, Vong. This natural conclusion is particularly easy to reach in this case, since Rand placed the acknowledgement that the three-days to rescind had passed on the same form as the notice of right to rescind. Further, the mere act of presenting the acknowledgment form to the consumer at the time of closing is likely to mislead the consumer into believing that it must be signed in order to consummate the transaction.

Further, the premature acknowledgement violates TILA because it is an impermissible waiver of the right to cancel. As was indicated above, waiver of the right to cancel is strictly limited to specified emergency situation.

The original case to conclude that a premature election not to cancel violates the TILA is *Rodash v. AIB Mortgage Company*, 16 F.3d 1142, 1146 (11th Cir 1994). Additionally, *Pulphus v. Sullivan*, 2003 WL 1964333 (N.D. Ill. Apr 28, 2003) disapproves of a form that implies that the consumer has waived his right to cancel at the closing. Further, *Wiggins v. Avco Fin. Servs.*, 62 F. Supp. 2d 90, 96 (D.D.C. 1990) observes that a premature election not to cancel amounts to a waiver of the right to cancel.

Under the TILA, the waiver of the right to cancel is strictly limited to specified emergency situations.   15 U.S.C. §   1635(d); 12 C.F.R. 226.23(e).

Since the premature acknowledgement that the three-days to rescind have passed constitutes an impermissible waiver of that right, the Mouas retain the right to rescind for three years, just as they would if the right to rescind was not extended to them at all. Thus, summary judgment in favor of Rand is not proper.

## VI.   THE MOUAS' CONSUMER FRAUD ACT CLAIM IS IN THE PUBLIC INTEREST

The Minnesota Consumer Fraud Act ("CFA ), Minn. Stat. §325F.69 *et seq.*, serves as a protection against unfair and deceptive trade practices, as described within, and provides, in pertinent part:

> Minn. Stat. §325F.69 Subdivision 1. Fraud, Misrepresentation, Deceptive practices. The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

To show a violation of the Minnesota CFA, a party must demonstrate two elements:  (1) there must be an intentional misrepresentations relating to the sale of merchandise; and (2) the misrepresentation must have caused damage to the

plaintiff. *Wiegand v. Walser Automotive Groups, Inc.,* 670 N.W.2d 449, 452 (Minn. App. 2003) (rev'd on other grounds) (*citing Group Health Plan, Inc. v. Philip Morris, Inc.,* 621 N.W.2d 2, 12 (Minn. 2001)). The Consumer Fraud Act permits a suit by a private citizen brought pursuant to Minn. Stat. § 8.31 and where there is a "public benefit. The Mouas' suit is indisputably brought under Minn. Stat. § 8.31.

The Rand argues that the Mouas' claims arise out of a one on one transaction and therefore ought to be dismissed. Rand also argues that the Mouas' lawsuit fails to have any benefit to the public, despite the fact that here, the Mouas seek injunctive relief to be fashioned by the court to prevent Rand from continuing the abusive lending practices visited upon the Mouas.

The court weighed the same public policy issues in *Hruby v. Larson,* 2005 WL 2266965 *5 (1995), where it stated:

> Plaintiffs assert that public policy favors protecting the victims of equity stripping and preventing wrongful eviction. Defendants respond that the public has an interest in holding people to the binding documents that they execute. Although the public interest does support the payment of debts, the court finds that it weighs more in favor of protecting people who are threatened with eviction as a result of potentially unlawful transactions. The court therefore determines that the Hrubys have established the fourth *Dataphase* factor. Considering that plaintiffs have met all four factors, the court finds that an injunction should issue.

The Minnesota Attorney General has used his statutory authority judiciously against a variety of lenders who victimize homeowners. On April 28, 2003, Attorney General Mike Hatch filed a lawsuit in Dakota County District Court

(Court File No. C4-03-7691) claiming that Home Funding Corporation ("HFC ) "stripped the equity  from many Minnesota homeowners in foreclosure. The lawsuit states that HFC ran newspaper advertisements offering help, including loans, to homeowners in foreclosure. HFC, however, never really gave anyone a loan. Instead, homeowners were led to believe that they would get new financing, but actually were turned into renters and all of their home equity was drained by HFC or others.

Attorney General Mike Hatch filed a lawsuit in Ramsey County District Court (Court File No. C6-0312006) against Hendrie Grant and Grand Holdings, LLC in September 2003, accusing him of swindling potentially hundreds of homeowners out of millions of dollars through foreclosure rescue scam transactions.

Both of these two actions by the Minnesota Attorney General were based on the Minnesota Consumer Fraud Act, where the Attorney General felt the public interest was at stake.

Albert Miller through Rand Corporation, like Hendrie Grant through Grant Holding, LLC, initially engaged in foreclosure rescue scam transactions and later engaged in HOEPA mortgage loans.  There is no doubt that the lending practices of Rand mirrors the practices of Hendrie Grant to a great extent.

Finally, consumers facing foreclosure seldom have money to bring suit to oppose a foreclosure.  Lenders prefer to battle each consumer one on one because the consumers have little financial resources.  Here, the court ought to allow

discovery to go forward to examine Rand's lending practices and, if warranted, enjoin any predatory lending practices. Rand can seek dismissal after some discovery is taken if it is warranted.

To distance itself from the conduct of its settlement agent, Rand relies on the fact that "no representative of Rand Corporation was present at the closing. However, the mere fact that no Rand employee was present at the closing hardly insulates Rand from the conduct of Rand's settlement agent acting within the course and scope of its agency. As discussed above, the Excel settlement agent had to be Rand's agent of purposes of the giving required notices and disclosures. Further, unless Rand departed from all lending practices, Rand sent detailed closing instructions to the Excel settlement agent, directing the agent to give the TILA disclosure, the Notice of Right to Cancel, the HOEPA Disclosure to the Mouas, as well as having the Mouas copy the typed statement purporting to waive their right to an advance HOEPA Disclosure. Any knowledge of the Rand's settlement agent is imputed to Rand, the principal, according to *Siharath v. Citifinancial Serv.*, 285 B.R. 299, 304 (Bankr.D.Minn. 2002) (holding that an agent's knowledge is imputed to the principal due to the identity of interests that is presumed when an agent acts within the scope of an agency relation.) Thus, wrongful conduct within the course and scope of this agency is rightly charged to Rand Corporation.

The Mouas affidavits clearly show that they suffered damages as a result of the Rand mortgage. Specifically, (a) Mr. Moua had a heart attack and a stroke; (2)

the Mouas were not informed of the monthly payment until their son, Vong, informed them of it after the settlement; (3) the Mouas did not receive the HOEPA Disclosure in advance of closing and as a result, they did not learn of the predatory lending terms until after the closing; (4) the Mouas were induced to waive their three day right to rescind by prematurely acknowledging at closing that the three days to rescind had already passed, and (5) the Mouas have been forced to incur legal costs to enforce the rescission process that Congress contemplated would be "self-enforcing.    There is a sufficient nexus between the wrongful conduct of Rand and Rand's settlement agent and the damages sustained by the Mouas.

When Rand claims that the foreclosure is a "natural consequence of a failure to make mortgage payments,   Rand ignores that the borrower's failure to make those payments may have been due to a lender's failure at closing.

## VII.    THE STATUTE OF LIMITATIONS DOES NOT BAR THE MOUAS' CLAIM FOR DAMAGES UNDER TILA OR HOEPA

Rand argues that since the Mouas did not commence their action within one year from the date of closing, they are barred from requesting damages.  Rand is correct that ordinarily the suit must be brought within one year of the date of the violation.

The court in *Kicken v. Valentine Production Credit Ass'n*, 628 F.Supp. 1008, 1101, (D.Neb.,1984), stated:

Paragraph 19 alleges that 15 U.S.C. § 1640's one-year statute of limitations should be tolled by the equitable doctrine of fraudulent concealment. Under this doctrine, a plaintiff must show that he exercised due diligence to discover his cause of action before the statute of limitations expired and that the defendant committed some affirmative act of fraudulent concealment which prevented the plaintiff from discovering his cause of action. Hughes v. Cardinal Federal Savings and Loan Association, 566 F.Supp. 834, 838 (U.S.D.C.S.D.Ohio 1983). Since a cause of action under § 1640 is created by nondisclosure of certain rights, the doctrine of fraudulent concealment does not apply unless the defendants have done more than merely failing to disclose certain information. Id.; Chevalier v. Baird Springs Association, 371 F.Supp. 1282, 1284-1285 (U.S.D.C.Wyo.1974)

Here, Rand retains the right to rescind, along with any rights ancillary thereto.

## VIII.   RAND DID VIOLATE MINNESOTA STATUTE SECTION 58.137, SUBD 1 IN MAKING THE MORTGAGE LOAN TO THE MOUAS

Set forth below in Table 4 are the calculations to show that Rand violated Minn. Stat. § 58.137, subd. 1, in making the mortgage loan to the Mouas.

Table 4

| Description | Payee | Amount |
|---|---|---|
| Origination Fee | Rand Financial Services | $3,675.00 |
| Commitment Fee | Rand Corporation | $3,575.00 |
| Mortgage Broker Fee | Aylward Group / RE/MAX | $4,621.00 |
| Prepaid Interest | | $378.39 |
| Total Lender Fees: | | $12,349.39 |
| | | |
| Loan Amount: | | $232,750.00 |
| | | |
| Lender Fees as a % of Loan Amount: | | 5.3059 % |

## IX.  RAND ATTEMPTED TO COMMIT FRAUD ON THE COURT BY REDACTING THE SIGNATURE LINE AT THE BOTTOM OF THE NOTICE OF RIGHT TO CANCEL AND SUBMITTING IT TO THE COURT AS A FULL AND COMPLETE COPY OF THE ORIGINAL DOCUMENT

In opposing the Mouas' motion for a temporary restraining order, the Plaintiff Rand Corporation filed a Notice of Right to Cancel with the court where the Mouas' signature line indicating that the three days to rescind had already passed was redacted.  Rand made it appear that it was a problem with the copier, but this failed attempt to mislead is symptomatic of the deceptive practices Rand employs at a closing.  Rand's counsel certified that the documents were "true and correct.

It is incredible that the very portion of the one document creating liability for Rand was accidentally cropped.  This defies the laws of probability and believability – particularly where while all of the other documents submitted to the court were copied perfectly.  Other copies of this Notice of Right to Cancel were similarly cropped.  Rand should be sanctioned for this failed attempt to commit fraud on the court.

**CONCLUSION**

For the foregoing reasons, this Court should deny Rand's Motion for Summary Judgment.

April 3, 2007                    By   s/P. John M. Tancabel
                                      John M. Tancabel (No.108273)
                                      895 Osceola Avenue
                                      Saint Paul, Minnesota 55105
                                      Tel. (651) 224-1244

                                      *Attorney for Defendant*
                                      *and Third-Plaintiffs*