## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Rand Corporation,

                    Plaintiff,

          v.

Yer Song Moua, Manisy Moua,
John Doe, and Mary Rowe,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 07-510 ADM/JSM

---

Eric D. Cook, Esq., Wilford & Geske, P.A., Woodbury, MN, on behalf of Plaintiff.

John M. Tancabel, Esq., John M. Tancabel Law Office, St. Paul, MN, on behalf of Defendants.

---

## I. INTRODUCTION

On April 18, 2007, oral argument before the undersigned United States District Judge was heard on Plaintiff Rand Corporation's ("Rand") Motion for Summary Judgment [Docket No. 21]. In its Complaint [Docket No. 1], Rand seeks a declaratory judgment that (1) it fully complied with its obligations under federal lending statutes to properly notify Manisy Moua and Yer Song Moua ("the Mouas") of their right to rescind their mortgage, (2) the Mouas did not detrimentally rely on the overstated annual percentage rate ("APR") or any other disclosure of the interest rates, (3) the Mouas failed to timely exercise their rescission rights, (4) Rand's mortgage and its subsequent foreclosure of the mortgage are valid and enforceable, and (5) Rand is the lawful owner of the Mouas' home and entitled to immediate possession. In their Counterclaim [Docket No. 15], the Mouas allege violations of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639(b), the Truth In Lending Act ("TILA"), 15 U.S.C. § 1635(a), and the Minnesota Prevention of Consumer Fraud Act ("CFA"), Minn. Stat. §

325F.69, subd. 1.  For the reasons set forth herein, Rand's Motion for Summary Judgment is granted.

## II. BACKGROUND

Manisy Moua and Yer Song Moua are husband and wife.  M. Moua Aff. [Docket No. 27] ¶ 1.  They are Hmong immigrants with limited English speaking and reading skills.  Id. ¶¶ 2-3; V. Moua Aff. [Docket No. 28] ¶ 9.  For six years, the Mouas have owned and lived at a home located at 2438 Arlington Avenue East, Maplewood, Minnesota, 55119 with their six children, two of their children's spouses, and three grandchildren.  M. Moua Aff. ¶¶ 1, 4; Miller Aff. [Docket No. 7] ¶ 3.  The Mouas initially obtained a mortgage loan for their home from Mortgage Electronic Registration System, Inc. ("MERS").  M. Moua Aff. ¶ 5.  The Mouas fell behind on their loan payments and MERS commenced foreclosure.  Id. ¶¶ 6-7.  A sheriff's foreclosure sale occurred on December 2, 2004, subject to a six month redemption period expiring on June 2, 2005.  Miller Aff. ¶ 4.

The Mouas aver that they were approached at their home by a realtor with RE/MAX Results named Pat Aylward ("Aylward").  M. Moua Aff. ¶¶ 8-9.  Aylward told the Mouas he could get them out of foreclosure and help them obtain a mortgage with lower payments.  Id. ¶ 10.  On January 5, 2005, the Mouas met Aylward at a Rand office and applied for a mortgage loan with Rand, a licensed mortgage originator, to refinance their existing mortgage loan and redeem from the earlier sheriff's foreclosure sale.  Id. ¶¶ 11-13; Miller Aff. ¶ 4. Countercl. ¶ 6.[1] Albert Miller ("Miller"), president of Rand, avers the Mouas originally requested a loan amount

---

[1] The Mouas aver Albert Miller had them sign an uncompleted mortgage application form and told them he would complete the application form later.  M. Moua Aff. ¶¶ 12-13.

of $198,800.  Miller Aff. ¶ 8 n.1; Lawrence Aff. [Docket No. 24] ¶ 3.  On March 30, 2005, after

selling a commercial building, the Mouas requested an increase in the loan amount to $245,000.

Miller Aff. ¶ 8 n.1; Lawrence Aff. ¶ 3.

On April 22, 2005, the Mouas closed on their mortgage loan with Rand.  M. Moua Aff.

¶¶ 16, 18; Miller Aff. ¶ 5.  Excel Title was hired by the parties to conduct the closing, and no

Rand employees were present at the closing.  Lawrence Aff. ¶ 4.  The Mouas aver that they

asked the closer to tell them what their monthly payments would be but that she would not tell

them.  M. Moua Aff. ¶ 21; V. Moua Aff. ¶ 8.  The Mouas executed a Promissory Note ("Note")

in the amount of $245,000.  Miller Aff. ¶ 5; Compl. Ex. 1; Tancabel Decl. [Docket No. 13] Ex.

B.  The Note listed the interest as "13.990% until May 1, 2006 at which time I will pay 14.990%

yearly."  Miller Aff. ¶ 6; Compl. Ex. 1.  The amount of monthly payments was listed as

"$2,883.55 until June 1, 2006 at which time my payment will increase to $3,272.04" until July 1,

2010.  Miller Aff. ¶ 6; Compl. Ex. 1.  The Mouas also executed a mortgage, dated April 22,

2005, and filed it with the Ramsey County Recorder's Officer on April 28, 2005.  Miller Aff. ¶ 7.

Rand avers that on January 5, 2005, and April 22, 2005, it provided the Mouas with all

required disclosures pursuant to TILA and HEOPA.  Lawrence Aff. ¶ 3; Miller Aff. ¶ 8; Compl.

Ex. 2.  The Mouas aver they did not get a 3 day advance HOEPA disclosure from Rand before

the April 22, 2005, closing.  M. Moua Aff. ¶ 17.  Rand, in response, avers the Mouas chose to

waive their three day waiting period based upon a bona fide personal financial emergency.

Miller Aff. ¶ 11.  Rand avers unsuccessful attempts were made earlier in April 2005 to close the

mortgage loan because the Ramsey County Sheriff failed to timely provide redemption payoffs

in advance of closing.  Id. ¶ 9; Compl. Ex. 3.  Rand avers that "[d]ue to the pending redemption

period set to expire in 41 days, the need to redo all loan documents, update all payoffs with other creditors, and the risk of losing loan approval if the closing were rescheduled past April 22, 2005," the Mouas decided on April 21, 2005, to proceed with closing on April 22, 2005.  Miller Aff. ¶ 10.  Manisy Moua avers that at the closing, she was told by the closer to copy a typed statement in her own handwriting.  M. Moua Aff. ¶ 23.  Manisy Moua avers she could not read the typed statement, did not know what it meant, and did not know why she was asked to copy it.  Id.  The typed statement that Manisy Moua copied in her own handwriting reads:

> We are aware that we are entitled to a 3 day review of the disclosures prior to closing of this transaction.  Because we are aware that the county has not been timely in returning the payoff statement on our mortgage and the current foreclosure proceedings we request that this 3 day review period be waived.
>
> We are further aware that we have a 3 day recession after signing the closing docs to review all the final documents.  We feel that this will allow us time to address any concerns or questions.
>
> Please accept our request to waive the 3 day review period.

Tancabel Decl. Exs. F, G; Miller Aff. ¶ 12; Compl. Ex. 4.

The Mouas were given a Notice of Right to Cancel ("Notice") at the closing.  Miller Aff. ¶ 13; Compl. Exs. 5, 6.  There are four versions of the Notice.  2d Cook Aff. [Docket No. 32] Exs. 22-25.  On the first two versions of the Notice, the Mouas signed and dated a section entitled "Receipt" to acknowledge that they in fact received the Notice.  Id. Exs. 22-23; M. Moua Aff. ¶ 25; Compl. Exs. 5, 6.  On the second two versions of the Notice, the Mouas signed and dated the "Receipt" section as well as a section of the Notice titled "Confirmation" which states: "More than 3 business days have elapsed since the date of the new transaction and I/We received this Notice and Truth-In-Lending disclosures with regard to the new transaction.  I/We certify that the new transaction has not been rescinded."  2d Cook Aff. Exs. 24-25; Tancabel Decl. Ex.

K. All four versions of the Notice are signed by both of the Mouas and all signatures are dated

April 22, 2005. 2d Cook Aff. Exs. 22-25. The Mouas aver they signed the Confirmation section

of the Notice on April 22, 2005. M. Moua Aff. ¶ 25. Rand avers that even if this is true, the

Mouas were directed to sign the Confirmation section of the Notice by the Excel Title closer,

without any authorization from Rand. Lawrence Aff. ¶ 5.

The Notice stated that the Mouas had until midnight on April 26, 2005, to cancel. Miller

Aff. ¶ 14; Compl. Exs. 5, 6. The Mouas did not cancel the transaction with Rand on or before

April 26, 2005. Miller Aff. ¶ 15. Excel Title did not disburse the loan closing proceeds until

April 27, 2005, after the expiration of the three day rescission period. Lawrence Aff. ¶ 6, Ex. 1.

$221,964[2] was paid to the Ramsey County Sheriff to redeem the property from the foreclosure

sale, $47,411.13 was paid to MGIC Credit Assurance Corporation, and $24,164.19 was paid for

settlement charges. Id. Ex. 1; Miller Aff. ¶ 16; Compl. Ex. 8; Tancabel Decl. Ex. A. The Mouas

gave Excel Title a check for $50,000[3] to pay off part of the previous mortgage. M. Moua Aff. ¶

20; Tancabel Decl. Ex. C.

After the closing, the Mouas returned home and reviewed the mortgage documents with

their son, Vong Moua, who reads and writes in English. V. Moua Aff. ¶¶ 1, 4-5; M. Moua Aff. ¶

26. The Mouas aver that they learned from their son that their new mortgage payments were

much higher than their previous mortgage payments, they had waived the 3 day advance HOEPA

---

[2] Miller avers $221,964 was paid to the Ramsey County Sheriff to redeem the Mouas'
property from closing, but the copy of the disbursement check to the Ramsey County Sheriff
provided to the Court is in the amount of $222,119.30. Lawrence Aff. Ex. 1.

[3] While the copy of the check provided to the Court is in the amount of $50,000, Rand
avers the Mouas paid $48,539.32 at closing. Miller Aff. ¶ 16.

disclosure, and they had missed the opportunity to cancel by signing the "Confirmation" portion

of the Notice.  V. Moua Aff. ¶¶ 6-7; M. Moua Aff. ¶¶ 27-28.  A few months after the closing,

Yer Song Moua had a heart attack and stroke.  V. Moua Aff. ¶ 14; M. Moua Aff. ¶ 31.  He has

been declared totally disabled by the federal government.  V. Moua Aff. ¶ 15.

On December 1, 2005, the Mouas failed to make their monthly mortgage payment, and

have not since made any mortgage payments.  Miller Aff. ¶ 17.  On March 1, 2006, Rand

commenced a foreclosure by advertisement and executed a Notice of Pendency of Proceeding

and Power of Attorney to Foreclose Mortgage.  Id. ¶ 18; Compl. Ex. 9.  On March 15, 2006, the

Mouas were personally served with a copy of the Notice of Mortgage Foreclosure.  Miller Aff. ¶

19; Compl. Ex. 10.  On April 11, 2006, the Mouas sent Rand a letter stating: "We hereby cancel

and rescind the mortgage we obtained from Rand Corporation dated April 22, 2005, in the

original amount of $245,000."  M. Moua Aff. ¶ 33; Miller Aff. ¶¶ 2, 20; Compl. Ex. 7; Tancabel

Decl. Ex. I.  On May 3, 2006, Rand's counsel wrote to the Mouas to deny their rescission request

on the basis that the Mouas had received notice of their rescission rights and chose not to

exercise them before they expired on April 26, 2005.  Miller Aff. ¶¶ 2, 22; Compl. Ex. 11.  On

May 4, 2006, the Mouas' home was sold at a sheriff's sale to Rand for $269,512.07.  Miller Aff.

¶¶ 2, 23; Compl. Ex. 10.  On November 4, 2006, the redemption period expired without the

Mouas exercising their redemption rights.  Miller Aff. ¶¶ 2, 24.  On January 29, 2007, Rand filed

the instant lawsuit against the Mouas.  At an eviction hearing on January 30, 2007, the Ramsey

County Housing Court determined after the Mouas failed to appear that Rand is entitled to

lawful possession of the property and the Mouas must vacate the home.  Miller Aff. ¶¶ 2, 25;

Cook Aff. [Docket No. 9] Ex. 16.  A move-out date was scheduled with the Ramsey County

Sheriff for February 23, 2007, at 9:00 a.m.  Miller Aff. ¶ 27.  The Mouas were given notice of

the move-out date by way of a letter from Rand's attorney dated February 12, 2007.  Cook Aff.

Ex. 12.

On February 22, 2007, the Mouas filed a Motion for a Temporary Restraining Order

("TRO") [Docket No. 10], which was granted by this Court until this case could be resolved on

its merits.  See TRO Order [Docket No. 17].  The sheriff's move-out was postponed, and the

Mouas are still living in the house at 2438 Arlington Avenue East.  The Mouas have not made

any mortgage payments and have been living in the home without any payment for one and a

half years.

### III. DISCUSSION

**A.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion

for summary judgment, the Court views the evidence in the light most favorable to the

nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party

may not "rest on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953,

957 (8th Cir. 1995).

**B.     Damages**

As an initial matter, Rand argues that the Mouas are not entitled to damages for any

violations of TILA or HOEPA because any claim for damages is barred by the one-year statute

of limitations.  Any claim for damages was to be brought "within one year from the date of the

occurrence of the violation," and the Mouas did not bring any claim by April 22, 2006, one year

from the closing.  15 U.S.C. § 1640(e).  The Mouas argue that the one-year statute of limitations

should be tolled by the equitable doctrine of fraudulent concealment.  <u>See</u> <u>Kicken v. Valentine</u>

<u>Prod. Credit Ass'n</u>, 628 F. Supp. 1008, 1011 (D. Neb. 1984).  However, the Mouas have not

shown that Rand "committed some affirmative act of fraudulent concealment which prevented

[the Mouas] from discovering [their] cause of action."  <u>Id.</u>  Consequently, the Mouas are not

entitled to any tolling of the one-year statute of limitations, and any damages claim the Mouas

might have had for any TILA or HOEPA violation is time barred.  However, this conclusion is

not determinative of whether the Mouas have a viable claim for rescission, and the Mouas'

rescission-based arguments are addressed below.

**C.     HOEPA**

    **1.     Three Day Advance Notice**

HOEPA requires creditors to make specific disclosures for certain types of mortgages.

15 U.S.C. § 1639(a).  The disclosures are required to "be given not less than 3 business days

prior to consummation of the transaction."  15 U.S.C. § 1639(b)(1).  If, after the disclosures are

made, the terms of the loan are modified such that the disclosures are inaccurate, new disclosures

must be given.  15 U.S.C. § 1639(b)(2).  A consumer may waive the three day advance waiting

period "if the consumer determines that the extension of credit is needed to meet a bona fide

personal financial emergency." 12 C.F.R. § 226.31(c)(1)(iii); 15 U.S.C. § 1639(b)(3). The consumer must give the creditor a dated, handwritten statement that describes the emergency, waives the advance waiting period, and is signed by all consumers who are entitled to the waiting period. 12 C.F.R. § 226.31(c)(1)(iii).

The Mouas argue that they did not intentionally waive the three day advance waiting period but rather Manisy Moua just copied a pre-printed typed statement at the direction of the Excel Title closer without knowing what she was copying. The Mouas also argue that no bona fide personal financial emergency was described in the handwritten waiver that would justify waiver of the waiting period. While the waiver does state that the county has not been timely in returning the payoff statement on the Mouas' mortgage, the Mouas argue this reason does not sufficiently identify a bona fide personal financial emergency because there were still 41 days remaining in the redemption period, which is sufficient time to obtain a payoff amount.

Rand argues that although the Mouas may have raised a genuine issue of material fact with respect to whether they were faced with a bona fide personal financial emergency, the question is irrelevant under the circumstances because even if the Mouas did not validly waive the three day advance notice, they are not able to obtain the remedy that they seek. Rand also argues that TILA does not provide a basis for creating a three year rescission period due to an improper waiver of the three day advance waiting period.

The Court finds Rand's argument to be persuasive. Although Rand's failure to provide the Mouas with HOEPA disclosures three days before closing would be a violation of HOEPA if the Mouas in fact did not have a bona fide personal financial emergency justifying a valid waiver, the question is irrelevant because any claim for damages based on a HOEPA violation is

time barred, and Rand's action does not give rise to a three year right of rescission.  The three

year right of rescission arises only if the lender fails to provide material disclosures at all.  15

U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).  Rand did not completely fail to provide the Mouas

with HOEPA disclosures, but rather failed to provide them until the date of closing.

Consequently, Rand's failure to provide the Mouas with HOEPA disclosures three days in

advance of closing does not serve as a valid basis to provide the Mouas with a three year right of

rescission.

### 2.      Accuracy of Disclosures

The Mouas argue that the HOEPA disclosure statement provided by Rand contains

inaccuracies and provides further basis for recognizing that the Mouas have a three year right to

rescind.  The Mouas first argue that Rand overstated the APR at 18.776%.  However, it is

unclear where the Mouas found this percentage, as the disclosure forms provided to the Court

reveal an APR of 16.775%.  Rand states that the Note rate of 13.99% for the first 12 payments

was inaccurately understated in the disclosures at 13.90%, the Note rate of 14.99% for the next

49 payments was inaccurately overstated in the disclosures at 15.90%, and the net effect was an

APR that was overstated in the disclosures by about 0.65%.

The annual percentage rate disclosed is considered accurate if it is not more than 1/8 of

one percentage point above or below the actual annual percentage rate.  15 U.S.C. § 1606(c); 12

C.F.R. § 226.22(a)(2).  Therefore, the 0.09% inaccuracy for the Note rate of 13.99% falls within

the acceptable range for accuracy.  The 0.91% inaccuracy for the Note rate of 14.99% and the

0.65% inaccuracy for the overall APR do not fall within the acceptable range to be considered

"accurate."  However, 15 U.S.C. § 1602(z) provides: "The disclosure of an amount or percentage

which is greater than the amount or percentage required to be disclosed under this subchapter does not in itself constitute a violation of this subchapter." At least one court has concluded that for an overstatement of the APR to be actionable, the borrower "must demonstrate detrimental reliance on that overstatement in order to be entitled to the 3-year rescissory period." Ramsey v. Vista Mortgage Corp. (In re Ramsey), 176 B.R. 183, 189 (Bankr. 9th Cir. 1994). The court reached this conclusion in part on the basis that Congress is more concerned about understatements than overstatements in the APR. Id. This Court finds the reasoning of the Ramsey court to be persuasive. Although outside the statutory tolerances, the overstatement of the Note rate of 14.99% and the overall APR were both under one percent and resulted in the actual cost of the Mouas' loan being less than what the Mouas agreed to. In addition, the Mouas have not argued that they detrimentally relied in any way on the overstated Note rate and APR. Consequently, the overstatement of the Note rate and the APR are not TILA violations that give rise to a three year right of rescission.

The Mouas next argue that Rand failed to disclose a regular monthly payment of $3,272.04. The Mouas were provided multiple disclosures at closing, and while the monthly payment of $3,272.04 is not revealed on some disclosure statements, it is revealed on others. Therefore, the Mouas have no basis for claiming that the monthly payment of $3,272.04 was not disclosed to them. The Mouas also argue that Rand overstated the balloon payment by $12,279.83. On the disclosures, the balloon payment is set at $245,331.95. Whether or not this is the correct balloon payment amount, the Court is hard pressed to find liability on the basis of an overstated balloon payment, since the end result would be that the Mouas' loan payment would be less than what the Mouas believed they were agreeing to pay. Finally, the Mouas

11

argue that Rand improperly identified "the highest your payment could increase" as the final balloon payment rather than the stepped-up monthly payment. However, 15 U.S.C. § 1639(a)(2)(B) requires the lender to disclose "the amount of the maximum monthly payment." The one time balloon payment of $245,331.95 is the maximum monthly payment, and so Rand's disclosure appears to properly comply with the requirements of the statute. Even if the disclosures were inaccurate, they could not be the basis for finding a three year rescission right, since the statute and regulations provide a three year right to rescind only if the lender fails to provide the material disclosures. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).

The Mouas cite 12 C.F.R. § 226.31(e) as requiring that the lender must give a copy of the HOEPA disclosures to each consumer to whom the right to rescind applies, and that Rand violated this provision by only giving the Mouas one copy of the HOEPA disclosures. 12 C.F.R. § 226.31(e) states: "If the transaction is rescindable . . . the disclosures shall be made to each consumer who has the right to rescind." 12 C.F.R. § 226.31(b)(1) requires the creditor to make the disclosures "clearly and conspicuously in writing, in a form the consumer may keep." These regulations do not amount to a requirement that Rand provide the Mouas with multiple copies of the disclosures. Rather, all that is required is that the disclosures be "made" to both Manisy and Yer Song Moua. It is clear that the disclosures were "made" to both of the Mouas, since both of their signatures appear on all of the disclosures. Also, the Mouas are husband and wife and live in the same home for which they were seeking the mortgage loan; therefore, it was reasonable for Rand to give the couple one copy of the disclosures, and this argument does not form the basis for a three year rescission right.

**D.     TILA - Notice of Right to Rescind**

TILA gives consumers the right to rescind their loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later."  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3).  "Material disclosures" include the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, certain notices, the amount of the regular payment and any balloon payment, and the amount borrowed.  15 U.S.C. § 1602(u); 12 C.F.R. § 226.23(a)(3) n.48.  Creditors must "clearly and conspicuously disclose" to borrowers their rights and provide "appropriate forms" for borrowers to exercise their right to rescind.  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(2).  If the required notices and material disclosures are not provided, consumers are entitled to a three year right of rescission after the date of consummation of the transaction.  15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).

Consumers also have the right to modify or waive the right to rescind "if the consumer determines the extension of credit is needed to meet a bona fide personal financial emergency." 12 C.F.R. § 226.23(e)(1); see also 15 U.S.C. § 1635(d).  "To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all the consumers entitled to rescind.  Printed forms for this purpose are prohibited."  12 C.F.R. § 226.23(e)(1).

The Mouas argue that Rand, through the Excel Title closer, had the Mouas prematurely acknowledge at closing that the three business days to rescind had passed and that the Mouas had not rescinded.  The Mouas argue that the premature acknowledgment violated the TILA

requirement that the consumer be given clear and conspicuous notice of the right to rescind and misled the Mouas into believing they had waived their rescission rights. The Mouas argue that the improper waiver invokes a three year right to rescind.

Rand responds that the "Confirmation" section signed by the Mouas contained no reference to a waiver of rescission rights and can not be interpreted as implying such a waiver. Rand argues that if the Excel Title closer did direct the Mouas to sign the confirmation section at closing, it was without authorization from Rand, and is a matter between the Mouas and the Excel Title closer. Additionally, Rand avers it fully honored the Mouas' three day rescission right, the mortgage loan did not fund until April 27, 2005, and the disbursement checks from the closing are each dated April 27, 2005.

The Mouas rely on Rodash v. AIB Mortgage Company, 16 F.3d 1142 (11th Cir. 1994), *abrogated on other grounds by* Veale v. Citibank, 85 F.3d 577, 580 (11th Cir. 1996), to support their arguments. In Rodash, the plaintiff was provided both a Notice of Right to Cancel form ("Notice") and an Acknowledgment of Receipt of Notice of Right to Cancel and Election Not to Cancel form ("Acknowledgment and Election") on the day of the closing of her mortgage loan. 16 F.3d at 1143-45. The plaintiff signed both forms at the closing. Id. The Acknowledgment and Election form had a single signature line which was intended to confirm both that the plaintiff had received the Notice, and that the plaintiff had decided not to cancel the transaction. Id. at 1145. The defendants specifically argued that by signing the sole signature line, the plaintiff waived her right to rescind the contract. Id. The court found the plaintiff's putative waiver to be invalid since pre-printed forms are prohibited by regulation. Id. at 1146. The court also held that the defendants violated TILA because the provision of the Acknowledgment and

14

Election form prevented clear and conspicuous notice of the plaintiff's right to rescind.  Id. at

1146-47.  Other courts have found the reasoning of Rodash persuasive.  See Pulphus v. Sullivan,

Civ. No. 02-5794, 2003 WL 1964333, at *15 (N.D. Ill. April 28, 2003); Wiggins v. Avco Fin.

Servs., 62 F. Supp. 2d 90, 95-96 (D.D.C. 1999).  However, the Eleventh Circuit refused to

extend Rodash beyond its facts in Smith v. Highland Bank, 108 F.3d 1325, 1327-28 (11th Cir.

1997).  In Smith, the plaintiff argued that the confusing Notice of Right to Cancel given to her at

closing deprived her of a meaningful right to rescind her loan transaction.  108 F.3d at 1326.

The court found Smith distinguishable from Rodash for several reasons: (1) even though the

Certificate of Confirmation not to cancel appeared on the same page as the Acknowledgment of

Receipt, they were found in separate, distinct paragraphs that were to be signed separately; (2)

even though the acknowledgment/confirmation form was provided on the same day of closing, it

clearly stated that the confirmation section was not to be signed until more than three business

days elapsed; (3) the form provided much more detailed information about how to cancel the

mortgage transaction than the form at issue in Rodash.  Id. at 1327.  The court upheld the district

court's grant of summary judgment to the defendant.  Id. at 1328.

    The Court finds the facts of this case to be closer to those of Smith than Rodash.  In this

case, the Mouas were given four Notice forms.  Two of the Notice forms had only a Receipt

section at the bottom, and two of the forms had both a Receipt section and Confirmation section.

Here, like in Smith, even though the Notice, Receipt, and Confirmation are all on the same page,

they can be found in separate distinct sections and are to be signed separately.  The Notice also

contained detailed information informing the Mouas of their legal right to cancel the transaction

within three business days.  The Mouas allege that they were directed to sign all of these forms

on the day of closing, including the Confirmation section, and the forms support the Mouas'

contentions since all signatures are dated 4-22-05.  However, the Confirmation section of the

Notice makes it clear that it is not to be signed until three business days have elapsed.

Specifically, the Confirmation section says: "More than 3 business days have elapsed since the

date of the new transaction and I/We received this Notice and Truth-In-Lending disclosures with

regard to the new transaction.  I/We certify that the new transaction has not been rescinded."  2d

Cook Aff. Exs. 24-25.

The Mouas rely heavily on their inability to read or write English.  Although the Court

views the facts in the light most favorable to the Mouas in this summary judgment context, the

facts include this was not the Mouas first real estate transaction in this country.  They owned and

sold a commercial building in the months preceding the closing of this mortgage loan.  Even if

the Mouas were unable to read and understand English, they reviewed their loan documents with

their English literate son when they returned home after the closing.  The Confirmation section

clearly states that it becomes effective once "More than 3 business days have elapsed."  The

Mouas cannot reasonably claim that they were misled by this language.

Additionally, Rand does not assert the Mouas waived their rescission rights by signing

the Confirmation section on April 22 and instead avers that the Mouas' three day rescission

rights were honored, as is evidenced by the fact that the loan did not fund until April 27, 2005,

and the disbursement checks were also dated April 27.  Accordingly, the Mouas' claim that Rand

has violated the TILA provision that requires clear and conspicuous notice of the right to

rescind, such that Rand's misleading Notice was no notice at all, fails.  The Mouas' premature

signatures on the Confirmation section also do not constitute an impermissible waiver because

they did not function as a waiver.  Rand did provide clear and conspicuous notice as it is

required to do, and did not require the Mouas to provide an impermissible waiver of their rights.

Rand has not violated TILA and the Mouas do not have a three year right of rescission on this

basis.

**E.     CFA**

The Mouas assert a counterclaim against Rand for violation of the Minnesota Prevention

of Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1.  The CFA prohibits "any person" from

using "any fraud, false pretense, false promise, misrepresentation, misleading statement or

deceptive practice, with the intent that others rely thereon in connection with the sale of any

merchandise."  Minn. Stat. § 325F.69, subd. 1.  The Mouas bring their CFA claim pursuant to

the Private Attorney General Statute, Minn. Stat. § 8.31, subd. 3a.

Rand argues that the Mouas' CFA claim fails because it does not provide a benefit to the

public, the alleged misrepresentations or omissions were made by parties other than Rand, and

the Mouas have not shown that any alleged misrepresentations caused any damage.  The Mouas

respond that their CFA claim does have a public benefit because they seek injunctive relief to

prevent Rand from continuing abusive lending practices, and the Court should allow the Mouas

discovery to examine Rand's lending practices.  The Mouas also argue that the Excel Title closer

was Rand's agent and therefore, her conduct is imputed to Rand.  Finally, the Mouas argue that

they have suffered damage, including Yer Song Moua's heart attack and legal costs.

The Court finds that the Mouas' CFA claim is without legal support.  A review of the

Mouas' CFA claim reveals that the Mouas complain primarily of misrepresentations and actions

committed by Aylward and the Excel Title closer, not of any misrepresentations or actions

17

committed specifically by any Rand employee.  Further, the Mouas' CFA claim is based on a

private transaction and contains no specific public benefit, as is required for the Mouas to

proceed under the Private AG Statute.  See Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000).

Although the Mouas' CFA claim could provide a public benefit if it sought to enjoin predatory

lending practices that Rand was employing against consumers beyond the Mouas, there is no

evidence that any other individuals had an experience similar to that of the Mouas with Rand,

and a theoretical public benefit is not enough to proceed.  See Davis v. U.S. Bancorp, 383 F.3d

761, 768 (8th Cir. 2004) (stating that the court will not assume that one individual's negative

experience with a company was necessarily duplicated for every other individual for purposes of

finding a public benefit); Behrens v. United Vaccines, Inc., 228 F. Supp. 2d 965, 971 (D. Minn.

2002) (stating that a theoretical public benefit is insufficient to satisfy the public benefit

requirement).

**F.      Minn. Stat. § 58.137, subd. 1**

In their Counterclaim, the Mouas argue that Rand violated Minn. Stat. § 58.137, subd. 1,

which states: "A residential mortgage originator making or modifying a residential mortgage

loan to a borrower located in this state must not include in the principal amount of any

residential mortgage loan all or any portion of any lender fee in an aggregate amount exceeding

five percent of the loan amount."  The statute defines "lender fee" as

> [I]nterest, points, finance charges, fees, and other charges payable by the borrower to any
> residential mortgage originator or to any assignee of any residential mortgage originator.
> Lender fee does not include recording fees, mortgage registration taxes, passthroughs, or
> other amounts that are paid by any person to any government entity, filing office, or other
> third party that is not a residential mortgage originator or any assignee of a residential
> mortgage originator.  Lender fee also does not include any amount that is set aside to pay
> taxes or insurance on any property securing the residential mortgage loan.

Minn. Stat. § 58.137, subd. 1.  The statute defines "loan amount" in relevant part as "the principal amount of the residential mortgage loan excluding all interest, points, finance charges, fees, and other charges."

The Mouas argue that the total lender fee was 5.3059%.  Rand argues that the Mouas' calculations are simply incorrect because the total lender fee in this case is 4.8%.  Further, Rand argues Minn. Stat. § 58.137, subd. 1 is merely a regulatory statute and does not create a private cause of action.

The settlement statement reveals that the principal loan amount was $245,000 and that the Mouas incurred $24,164.19 in settlement charges.  Compl. Ex. 8.  Of the $24,164.19, $3,675 was charged as a loan origination fee, $3,675 was charged as a commitment fee, and $4,521.61 was charged as a broker fee, for a total of $11,871.61, which is 4.8% of $245,000.  The Mouas argue that $378.39 in prepaid interest charges should be included in the lender fee amount, for a total of $12,250, and that $12,250 should be subtracted from the loan amount for a total of $232,750, which leads to the lender fee constituting 5.3% of the loan amount.

Whether the prepaid interest should be included as part of the lender fee is uncertain. However, even if included, the Mouas' argument still fails.  The total amount owed by the Mouas at closing was $293,539.32.  After the loan of $245,000, the Mouas still owed an additional $48,539.32 to cover the redemption of their previous mortgage and the financing of their current mortgage, explaining why the Mouas brought a check for $50,000 to the closing. The $50,000 check was in excess of the lender fees owed by the Mouas, which means the lender fees need not be included in the principal loan amount.  Even if they were, Minn. Stat. § 58.137, subd. 1 is a regulatory statute and there is no indication that the legislature intended it as basis

19

for a private cause of action.  Further, the Mouas' attempt to initiate a private cause of action

under Minn. Stat. § 58.137 through the Private Attorney General Statute, Minn. Stat. § 8.31, as

discussed previously, fails for absence of a public benefit.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Plaintiff Rand Corporation's Motion for Summary Judgment

[Docket No. 21] is **GRANTED**.  The Temporary Restraining Order [Docket Nos. 10, 17] is

hereby **DISSOLVED**.  The $3,000 bond posted by the Mouas is **DISCHARGED** and the clerk

is directed to return the $3,000 bond to the Mouas.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery

_____

ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: May 30, 2007